Andre CLEVELAND, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–03–01040–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 7, 2005.

Discretionary Review Refused
Sept. 14, 2005.

Henry L. Burkholder, III, Houston, for Appellant.

Lori Deangelo Fix, Asst. Dist. Atty., Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Houston, for Appellee.

ELSA ALCALA, Justice.

Appellant, Andre Cleveland, pleaded not guilty to the charge of murdering his wife. A jury found appellant guilty of murder, found against appellant on the special issue of sudden passion, and assessed punishment at confinement for life in prison. Appellant brings four points of error concerning the guilt-innocence phase of his trial. In his first two points of error, appellant contends that the trial court erred by denying his motion to suppress

evidence of the search of his residence and by overruling his objection to closing argument by the State that allegedly commented on appellant's post-arrest silence. In his third and fourth points of error, appellant contends that the State failed to disprove beyond a reasonable doubt that he killed his wife while acting in self-defense, and that the evidence is therefore legally and factually insufficient to sustain his murder conviction. Concerning the punishment stage of his trial, appellant's fifth and sixth points of error assert that, although he had the burden to prove by a preponderance of the evidence that he killed his wife out of sudden passion arising out of an adequate cause, the evidence is legally and factually insufficient to sustain the jury's negative answer to the sudden passion special issue. We affirm.

## Background

Carolyn Cleveland and appellant, her husband, had been together for approximately 15 years. They lived in Spring, Harris County, Texas, with their 15–year-old daughter Andrea, Carolyn's 20–year-old daughter, Jessica, and Jessica's infant baby. Two firearms, a handgun and a shotgun, were kept in the house. On the afternoon of March 6, 2003, Carolyn gave the handgun and the shells for the shotgun to Jessica to hide because Carolyn planned to serve appellant with divorce papers that evening.

When appellant arrived at the house at about 6:00 p.m., Carolyn went downstairs to give appellant the divorce papers. Andrea, Jessica and Jessica's baby were in the upstairs portion of the house. Appellant and Carolyn had been discussing matters for about an hour and a half when Jessica's baby became hungry. Jessica walked downstairs, holding her five-month-old baby, to get the child's formula from the refrigerator. As Jessica approached the kitchen, Jessica saw her mother seated on a sofa. Appellant was on his knees in front of her. Jessica heard appellant tell Carolyn that he wanted a divorce, but that "he would kill her before he would let her get a divorce and take the house." When appellant saw Jessica, he cursed at her, accused her of causing problems in the marriage, and told her to go back upstairs. Jessica got the baby's formula and began to return to her room.

As Jessica reached the top of the stairs, she heard her mother "squeal" loudly. Jessica put her baby in a room upstairs and ran downstairs to help her mother, accompanied by Andrea, who had also heard the scream. Andrea and Jessica saw appellant pin Carolyn down with one of his knees as he used one arm to beat her and the other arm to stab her. Andrea and Jessica tried to help Carolyn, but appellant "wrestled" them. Although Jessica managed to escape into the kitchen and get a knife, appellant took the knife from her and used it to stab her in the chest. When Carolyn collapsed, bleeding, on the floor by the front door, Jessica went upstairs to call 911.

Appellant scrubbed the sofa with a towel where Carolyn had been seated, but then returned to stabbing Carolyn as she remained face down on the floor. Andrea tried to help Carolyn by striking appellant with a cooking pan, but she had to back away from him when he swung at her. After Jessica called 911, she and Andrea attempted CPR on Carolyn. Appellant did not assist, scream, cry, or do anything to help Carolyn. He did, however, treat his own injury by wrapping a cloth around the small cut on his hand.

At 8:39 p.m., a Harris County deputy constable approached appellant's house in response to a stabbing-in-progress call. Appellant walked out of the house towards the deputy and very calmly said, "I

stabbed her because she always—," but did not complete his sentence. The deputy handcuffed appellant and took him into custody. When the deputy heard Andrea and Jessica screaming hysterically for help, he entered the house. He brought appellant with him, in handcuffs, because no other officers were present to assist. As Andrea and Jessica continued to attempt CPR on their mother, appellant appeared "very, very calm" as he observed his wife on the floor.

After emergency personnel arrived at the house and pronounced Carolyn dead, the deputy returned the handcuffed appellant to the patrol car. Harris County Sheriff's Deputy J.D. Gideon arrived at the scene and read appellant his rights. Appellant waived his rights and agreed to speak to the officers.

J. Ortiz, a deputy assigned as a crime-scene technician and latent fingerprint examiner in the identification division of the Harris County Sheriff's Department, obtained appellant's consent to search the house. Deputy Ortiz entered the house, photographed and videotaped it, and collected evidence that included six knives. The autopsy showed that Carolyn received 22 stab wounds and died as a result of multiple, sharp-force injuries.

Appellant gave an oral statement to Deputy Gideon while in custody at the police station. In that conversation, appellant told Deputy Gideon that his wife informed him that she had filed for divorce, that she would take the house and the money, that he "lost it," walked to the kitchen, went back to the couch, and stabbed her.

At trial, appellant testified that he did not want to divorce Carolyn and still loved her, but he acknowledged that he had previously filed for divorce and that they had discussed divorce months earlier. Appellant claimed that, when he knelt down before Carolyn in an attempt to persuade her to attend marriage counseling with him, she pulled a four-inch knife that was slightly larger than a steak knife from the side of the sofa, which caused him to fear for his life. According to appellant, Carolyn swung the knife at him once, but she did not cut him, and he quickly disarmed her. Appellant stated that, at that point, "I panicked and I started stabbing her." Appellant described his mental state at the time of the stabbing as "in another world," "panicking," and in "fear of [his] life," but he denied being upset. Appellant acknowledged that nothing prevented him from simply leaving the house after he took the knife from Carolyn and that Jessica, who cut him with a knife, inflicted the only wound that he received that night. Appellant denied stabbing Jessica and denied making any statement about stabbing his wife to the deputy constable who first arrived at the house. Appellant acknowledged that, before peace officers responded to the stabbing at his house, he spoke on the telephone to family members, his employer, and to the 911 operator, whom he told that he had stabbed his wife, but without mentioning self-defense.

### Sufficiency of the Evidence to Establish Murder by Disproving Self–Defense

■ Because appellant raised the issue of self-defense, to convict him for murder, the State had to prove the elements of the offense beyond a reasonable doubt, and the State had to persuade the jury that appellant did not kill his wife in self-defense. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App.2003). In his third and fourth points of error, appellant contends that the evidence is legally and factually insufficient to support his conviction for murder because the State did not rebut his

assertion of self-defense beyond a reasonable doubt.

■ In assessing legal sufficiency, we determine whether, based on all of the record evidence, viewed in the light most favorable to the verdict, a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003). In conducting our review of the legal sufficiency of the evidence, we do not reevaluate the weight and credibility of the evidence, but ensure only that the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App. 1993).

■ In a factual sufficiency review, we view all the evidence in a neutral light and will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State,* 143 S.W.3d 814, 817 (Tex.Crim. App.2004). In conducting a factual sufficiency review, we must discuss the evidence that appellant contends most undermines the jury's verdict. *See Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). Unless the available record clearly reveals that a different result is appropriate, we must defer to the jury's determination concerning what weight to give conflicting testimony because resolution of facts often turns on evaluation of credibility and demeanor. *See Johnson v. State,* 23 S.W.3d 1, 8 (Tex.Crim.App.2000).

■ A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PEN.CODE ANN. §§ 19.02(b)(1), 19.02(b)(2) (Vernon 2003). However, a person is generally justified in using deadly force against another if he reasonably believed that deadly force was necessary to protect himself against the other's use or attempted use of unlawful force, and a reasonable person in the actor's situation would not have retreated. TEX. PEN.CODE ANN. §§ 9.31(a), 9.32(a) (Vernon 2003). A defendant has the burden of producing some evidence to support a claim of self-defense. *Zuliani,* 97 S.W.3d at 594. Once the defendant produces that evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion does not require the State to produce evidence; it requires only that the State prove its case beyond a reasonable doubt. *Id.* A determination of guilt by the factfinder implies a finding against the defensive theory. *Id.* The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject the defensive issue. *Saxton v. State,* 804 S.W.2d 910, 913–14 (Tex. Crim.App.1991). As the sole judge of the weight and credibility accorded any witness's testimony, the jury is free to believe or disbelieve the testimony of all witnesses, and to accept or reject any or all of the evidence produced by the respective parties. *See Upton v. State,* 853 S.W.2d 548, 552 (Tex.Crim.App.1993).

Appellant contends that the evidence is legally and factually insufficient to disprove that he acted in self-defense because he feared for his life when his wife swung at him with a knife. By his own admission, however, appellant stabbed his wife after disarming her, while she was unarmed and seated on a sofa, even though he could have easily left the house instead. Appellant acknowledged that his wife never harmed him physically in any way.

From appellant's own testimony, a rational jury could have therefore concluded that deadly force was not immediately necessary for appellant to defend himself. In addition, Andrea and Jessica both testified that appellant stabbed Carolyn in the back as she was lying face down and bleeding by the front door. A rational jury also could also have reasonably concluded that appellant's conduct in continuing to stab his wife in the back as she lay bleeding on the floor was inconsistent with his claim of self-defense. Finally, the jury could have reasonably found appellant's claims of self-defense incredible because he did not claim self-defense until he testified at trial.

After reviewing all of the evidence in the light most favorable to the verdict for legal sufficiency analysis, we conclude that a rational jury could have reasonably found against appellant on the issue of self-defense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89. Upon viewing all the evidence in a neutral light for factual sufficiency analysis, we further conclude that the jury was justified in finding appellant guilty of murder beyond a reasonable doubt by impliedly finding against him on his claim of self-defense. *See Escamilla*, 143 S.W.3d at 817. The evidence supporting the verdict is not so weak that the jury's finding appellant guilty of murder beyond a reasonable doubt is clearly wrong and manifestly unjust; nor is appellant's contrary evidence so strong that the State's burden to disprove self-defense beyond a reasonable doubt could not have been met. *See id.*

We overrule appellant's third and fourth points of error.

## Motion to Suppress Evidence

█ In his first point of error, appellant contends that the trial court erred by allowing the State to introduce evidence of the search of appellant's residence in violation of appellant's federal constitutional right against unreasonable searches and seizures,[1] because the State failed to prove that appellant consented to the search voluntarily, knowingly, and intelligently.

█ A search conducted with the voluntary consent of the suspect is an exception to the constitutional requirement that a search be conducted only pursuant to a warrant issued upon a finding of probable cause. *See Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App.2002); *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex.Crim.App.2000). The State must prove by a preponderance of the evidence that the consent was freely and voluntarily given. *Maxwell*, 73 S.W.3d at 281. We examine all of the circumstances to determine whether the State met this burden. *Id.* To be valid, consent must not be coerced by explicit or implicit means, by implied threat, or by covert force. *Schneckloth*, 412 U.S. at 228, 93 S.Ct. at 2048; *Carmouche*, 10 S.W.3d at 331. Among the factors that determine voluntariness are whether the consenting person is in custody, whether he was arrested at gunpoint, and whether the person was informed that he did not have to consent. *Carmouche*, 10 S.W.3d at 331.

█ We review the trial court's ruling on a motion to suppress evidence for abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their

---

1. Appellant asserts only a federal constitutional claim.

testimony. *Maxwell,* 73 S.W.3d at 281. The appropriate standard for reviewing a trial court's ruling on a motion to suppress is bifurcated: we defer almost totally to the trial court's determination of historical facts and review de novo the court's application of the law. *Id.; Guzman,* 955 S.W.2d at 89.

Appellant contends that he did not consent voluntarily to the search of his house because, when he gave the consent (1) he had not been given *Miranda*[2] warnings; (2) he had not been told that he had the right to decline consent; (3) he had not been taken before a magistrate; and (4) he was handcuffed in the backseat of the patrol car. The record does not support appellant's first two assertions, but shows instead that, when Deputy Gideon first approached appellant at his house on the night of the stabbing, the deputy read appellant his rights.[3] Additionally, the written consent form that appellant signed informed him that he had a right to decline consent,[4] as follows:

> I, Andre Paul Cleveland, having been informed by the below officers of my constitutional right not to have a search made of my premises and/or vehicle hereafter mentioned without a search warrant and of my right to voluntarily consent to such a search, hereby authorize J. Ortiz and J[.] Gideon and other peace officers of the Harris County Sheriff's Department, to conduct a complete search of [my] residence located at 2415 Woodsboro, in Harris County, Tex-

as. These officers are authorized by me to seize any and all letters, papers, material and other property, which they desire. This consent is being given to the above peace officers freely and voluntarily and with out [sic] threats or promises of any kind and is given with my full and free consent.

Appellant correctly asserts that he was never taken before a magistrate prior to giving his consent, but cites no authority requiring that he appear before a magistrate for the consent to be voluntary. *See Rosalez v. State,* 875 S.W.2d 705, 722 n. 20 (Tex.App.-Dallas 1993, pet. ref'd) ("[T]he failure to take an accused before a magistrate does not in itself invalidate a consent to search unless such failure in some manner caused or contributed to bringing about the consent to search."). Because the record shows that Deputy Gideon read appellant his rights at the scene before he gave consent, and also shows that appellant was informed, both orally and in writing, of his constitutional right not to have officers search his residence, his not receiving those warnings from a magistrate does not render his consent to search involuntary.

Appellant's last assertion concerning the voluntariness of his consent to search is that he was handcuffed in the backseat of the patrol car before he signed the consent form. The record shows that, when Deputy Ortiz approached appellant to request his consent, the deputy read the consent-to-search form aloud to appellant, appel-

**2.** *Miranda v. Arizona,* 384 U.S. 436, 473, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966).

**3.** Even if the record had shown otherwise, the reading of *Miranda* rights is not required as a precondition for obtaining consent to search. *See Rayford v. State,* 125 S.W.3d 521, 528 (Tex.Crim.App.2003) ("Contrary to appellant's claims, we know of no authority that requires informing a suspect of his rights un-

der *Miranda* before obtaining a consent to search, and appellant points to none.").

**4.** "Although a police officer's failure to inform the accused that he can refuse consent is a factor to consider," its absence "does not automatically render the accused's consent involuntary." *Johnson v. State,* 68 S.W.3d 644, 653 (Tex.Crim.App.2002).

lant indicated that he understood it and signed it after his handcuffs were removed. The record further demonstrates that the officers' guns were not drawn when appellant consented, and that no threats were made to appellant. *See Rayford v. State*, 125 S.W.3d 521, 528–29 (Tex. Crim.App.2003) ("Nor is consent rendered involuntary merely because the accused is under arrest, at least when the officers' guns are not drawn."). Appellant's consent was not rendered involuntary merely because he was under arrest in handcuffs in the rear seat of a patrol car before signing the consent form.

We conclude that appellant's consent was voluntary under the circumstances demonstrated by the record, which show that the written consent form was read aloud to appellant, who understood it, that appellant was read his rights before giving his consent, that appellant was advised in writing that he had a constitutional right not to have a search made of his premises without a warrant, and that no threats or promises were made to induce appellant's consent. Additionally, appellant's demeanor was described as "fully cooperative," "normal," "seemed like he knew what he was doing," and "functioning okay."

Viewing the circumstances as a whole and giving deference to the trial court's implied findings of historical fact, we hold that the State established by a preponderance of the evidence that appellant voluntarily consented to the search of his residence, and, therefore, that the trial court did not abuse its discretion by overruling appellant's stated objections to admitting the evidence seized from his residence.

We overrule appellant's first point of error.

### Jury Argument Concerning Post–Arrest Silence

In his second point of error, appellant contends that the portion of the prosecutor's closing argument to the jury regarding appellant's self-defense claim "was a comment on the appellant exercising his right to remain silent under the State Constitution." Appellant's complaint on appeal concerns only article I, section 10 of the Texas Constitution. *See* TEX. CONST. art. I, § 10.

Appellant complains of the following closing argument by the State's attorney during the guilt-innocence phase of trial:

> State's attorney: ... [H]e never even uttered a word about self-defense until yesterday from that stand. That's the first time we ever heard that ludicrous story ... Lots of chances to tell about self-defense.

> ...

> State's attorney: He talked to his momma, he talked to his sister, he talked to Boston Market, he talked to a 911 operator. He talked to Hagerty. He talked to Gideon. Not once did the word "self-defense" come out of his mouth. He got to sit right there in that chair, watch every one of the State's witnesses come in here and tell what they had to say and then he got to formulate his defense. Unlike any other witness, he got a preview of the State's case.

Appellant's trial counsel objected to the argument by asserting that appellant "has a right to remain silent. I object to being improper argument on the part of counsel." The trial court overruled the objection and allowed appellant a "continuing objection."

Article I, section 10 of the Texas Constitution protects a defendant's post-arrest silence even *before his Miranda* warnings

have been administered. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App. 2004). In contrast, the Fifth Amendment of the federal constitution protects post-arrest silence made only *after a defendant's Miranda* warnings have been given. *Id.*

Rule of Appellate Procedure 33.1(a)(1)(A) provides, in part, that for a complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court, which "states the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex.R.App. P. 33.1(a)(1)(A). Additionally, it is well-settled that the legal basis of a complaint raised on appeal cannot vary from the legal basis asserted at trial. *Heidelberg*, 144 S.W.3d at 537. *Heidelberg* held that an objection at trial, that Heidelberg's Fifth Amendment rights were violated, was not sufficient to preserve a complaint on appeal that his rights to post-arrest silence under the Texas Constitution were violated. *See id.*

■ To preserve error concerning the greater post-arrest silence protections afforded to defendants under the Texas Constitution, a defendant's objection must refer specifically to either the Texas Constitution or the *Sanchez* case. *See Heidelberg*, 144 S.W.3d at 537; *Sanchez v. State*, 707 S.W.2d 575, 582 (Tex.Crim.App.1986). Because appellant complained only generally at trial of his "right to remain silent," without any further assertions concerning his rights to post-arrest silence under either the Texas Constitution or the *Sanchez* case, we hold that appellant's trial objection was not sufficient to make the trial court aware of his complaint. *See Heidelberg*, 144 S.W.3d at 537; *Sanchez*, 707 S.W.2d at 582; Tex.R. Evid. Ann. 103(a)(1).

We further hold that the specific grounds of appellant's complaint were not apparent from the context. *See* Tex.R.App. P. 33.1(a)(1)(A). Appellant has not preserved this issue on appeal.

We overrule appellant's second point of error.

### Sufficiency of Evidence of Sudden Passion in Punishment Phase of Trial

Until September 1, 1994, evidence that the defendant killed a person while acting under the immediate influence of sudden passion arising from an adequate cause was raised by a defendant at the guilt-innocence phase of trial; to obtain a conviction for murder, the State had the burden to disprove the sudden passion issue beyond a reasonable doubt. *Bradley*, 688 S.W.2d at 851. In 1993, the Legislature changed the sudden passion issue from a guilt-innocence issue to a punishment issue, as follows: "At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *See* Act of May 29, 1993, 73rd Leg., R.S., ch 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614 (*codified by* Tex. Pen. Code Ann. § 19.02(d) (Vernon 2003)); *see also Hernandez v. State*, 127 S.W.3d 206, 211–12 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (holding that defendant bears burden at punishment phase of trial to prove issue of sudden passion by preponderance of evidence). The jury charge at the punishment phase of appellant's trial contained a special issue asking the jury whether appellant proved by a preponderance of the evidence that he killed his wife out of sudden passion arising from an ade-

quate cause. The jury's punishment verdict was: "We do not."

In addition to sudden passion, other offenses in our Penal Code place the burden of proof on the defendant to prove certain issues by a preponderance of the evidence. For example, the offense of aggravated kidnapping similarly places the burden of proof on the defendant in the punishment phase of trial; if the defendant proves by a preponderance of the evidence that the kidnapping victim was voluntarily released in a safe place, the defendant receives a reduced punishment range. *See* TEX. PEN. CODE ANN. § 20.04(d) (Vernon 2003). The Penal Code also proscribes that certain defenses are affirmative defenses that the defendant must prove in the guilt-innocence phase of trial by a preponderance of the evidence. *See* TEX. PEN.CODE ANN. § 2.04 (Vernon 2003) (stating law of affirmative defenses); *see also* TEX. PEN.CODE ANN. § 8.01 (Vernon 2003) (insanity is affirmative defense); TEX. PEN.CODE ANN. § 8.05 (Vernon 2003) (duress is affirmative defense); TEX. PEN.CODE ANN. § 25.05(d) (Vernon 2003) (inability to provide child support is affirmative defense for criminal nonsupport). Similarly, a defendant is presumed to be competent to stand trial unless proved incompetent by a preponderance of the evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 46B.003(b) (Vernon Supp.2004–2005).

The issue of sudden passion in a murder case thus places the burden of proof on the defendant to prove the issue by a preponderance of the evidence in the same manner as the following: voluntary release in an aggravated kidnapping case; the affirmative defenses of insanity and duress; the affirmative defense of inability to pay child support in a criminal nonsupport case; and proof of incompetency to stand trial.

Appellant's fifth and sixth points of error challenge the legal and factual sufficiency of the evidence concerning the jury's negative finding on the affirmative defense of sudden passion, which appellant had the burden to prove by a preponderance of the evidence. TEX. PEN.CODE ANN. §§ 19.02(d); 20.04. Well-established law permits appellate review of the factual sufficiency of the evidence to support a jury's negative finding on an issue for which the defendant had the burden of proof at trial. *Meraz v. State,* 785 S.W.2d 146, 154–55 (Tex.Crim.App.1990); *Hernandez,* 127 S.W.3d at 211–12; *Zuniga v. State,* 144 S.W.3d 477, 482 (Tex.Crim.App.2004).

Concerning legal sufficiency challenges to a jury's negative finding on an issue for which the defendant had the burden of proof at trial, however, in *Patterson v. State,* 121 S.W.3d 22, 24 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd, untimely filed), we concluded that lack of jurisdiction precluded review of these challenges.[5] We now overrule that portion of *Patterson* and hold, based on the reasoning set out below, that we may properly review both types of sufficiency challenges—those by which we review the evidence as a matter of law, for legal sufficiency, and those by which we review the evidence neutrally, for factual sufficiency.

### Legal Sufficiency Reviews of Sudden Passion

#### A. Jurisdiction

■ The State contends that we lack jurisdiction to conduct a legal sufficiency review of a jury's negative finding on the

---

5. *Patterson* relied only on *Naasz v. State,* 974 S.W.2d 418, 421 (Tex.App.-Dallas 1998, pet. ref'd), without additional analysis or explanation concerning why a legal sufficiency review was improper. *Patterson v. State,* 121 S.W.3d 22, 24 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd, untimely filed).

sudden passion issue. *See Patterson*, 121 S.W.3d at 24; *see also Naasz v. State*, 974 S.W.2d 418, 421 (Tex.App.-Dallas 1998, pet. ref'd) ("When a defendant seeks appellate review of a jury's failure to make a finding on which the defendant has the burden of proof, such as on an affirmative defense, the defendant invokes our *factual* review jurisdiction.") (emphasis added). *Naasz* relied on *Meraz*. *Naasz*, 974 S.W.2d at 421 (citing *Meraz*, 785 S.W.2d at 154–55). *Meraz*, however, did not hold that appellate courts have no jurisdiction to conduct legal sufficiency reviews on a jury's negative finding of an issue that the defendant must prove. *Meraz* addressed only what review governs factual sufficiency reviews of a jury's negative finding on issues that the defendant had the burden to prove. *See Meraz*, 785 S.W.2d at 154–55; *Howard v. State*, 145 S.W.3d 327, 333–34 (Tex.App.-Fort Worth 2004, no pet.).

 Pursuant to article V, section 6(a) of the Texas Constitution, "Courts of Appeals shall have appellate jurisdiction ... conclusive on all questions of fact brought before them on appeal or error." *Clewis v. State*, 922 S.W.2d 126, 129 & n. 4 (Tex. Crim.App.1996) (quoting Tex. Const. art. V, § 6(a)). The Constitution thus permits review of both legal and factual sufficiency of the evidence when the State has the burden of proof concerning elements of the offense. *See id.* at 131, n. 4 (citing Tex Const. art. V, §§ 5 & 6).

In civil cases, appellate courts have jurisdiction to review the evidence for legal sufficiency when an appellant challenges the legal sufficiency of the evidence to support the jury's adverse answer to an issue on which he had the burden of proof. *See Howard*, 145 S.W.3d at 333–34 (citing

*Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 940 (Tex.1991); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989)). We discern no rational basis on which to reconcile *Patterson's* conclusion, that we lack jurisdiction to review challenges to the legal sufficiency of the evidence to support a factfinder's negative finding on an issue that a criminal defendant had to prove at trial, with Article V, section 6(a)'s conferring this Court with final, conclusive jurisdiction over factual resolutions, which jurisdiction we have consistently and unquestionably exercised to review legal and factual sufficiency challenges in criminal cases in which the State had to prove the elements of the offense at trial, and in civil cases in which either party challenges the factfinder's negative finding on issue that the challenging party had to prove at trial. We therefore conclude and hold that Article V, Section 6(a) of the Constitution vests this Court with jurisdiction to review the evidence as a matter of law for legal sufficiency and neutrally for factual sufficiency.[6] *See Howard*, 145 S.W.3d at 332. Accordingly, a majority of the en banc court overrules the portion of the *Patterson* opinion in which we stated that we have no jurisdiction to conduct a legal sufficiency review of the jury's negative finding on an issue that the defendant had to prove. *See Patterson*, 121 S.W.3d at 24.

## B. Standard of Review

We must next determine what standard of review applies for determining the legal sufficiency of the evidence concerning negative findings on issues that the defendant had to prove by a preponderance of the evidence.

---

6. A majority of Texas intermediate courts of appeals conduct legal sufficiency reviews on issues that the defendant must prove by a preponderance of the evidence. *See Howard* *v. State*, 145 S.W.3d 327, 332 (Tex.App.-Fort Worth 2004, no pet.) (additional citing references omitted).

■ We review legal and factual sufficiency of the evidence when the State has the burden of proof concerning elements of an offense as follows. Review for legal sufficiency assesses the evidence in the light most favorable to the jury's verdict and is the minimum standard for comporting with federal due process as stated in *Jackson v. Virginia,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89. *See Clewis,* 922 S.W.2d at 128–29. Review for factual sufficiency assesses the evidence neutrally. *See Clewis,* 922 S.W.2d at 131–33. The remedies an appellant seeks and receives from the reviews also differ. If the evidence is legally insufficient to establish the elements of the offense, the appellant is acquitted and may not be retried for the offense; if the evidence is factually insufficient to establish the elements of the offense, the appellant may be retried for the offense. *Id.* at 131.

■ As stated in *Meraz,* in criminal cases in which a defendant challenges the factual sufficiency of the evidence to support a jury's negative finding on an issue that the defendant had to prove, the standard is the same used in civil cases, specifically, whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz,* 785 S.W.2d at 154–55; *Howard,* 145 S.W.3d at 330–33. Although the *Meraz* court concluded that the proper standard for review of factual sufficiency challenges to a negative finding on an issue that the defendant had to prove is not the legal sufficiency standard used in *Jackson v. Virginia,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89, *Meraz* is silent concerning what standard of review applies to evaluate the legal sufficiency of the evidence when a jury returns a negative answer on an issue that the defendant had to prove.[7]

■ Consistent with our reliance on civil law for the standard of review for factual sufficiency reviews, we conclude that the proper standard in criminal cases for review of legal sufficiency challenges to a jury's negative finding on an issue that the defendant had to prove is the same standard applied in civil cases. *See Howard,* 145 S.W.3d at 333 (citing *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989)); *Meraz,* 785 S.W.2d at 154–55; *Zuniga,* 144 S.W.3d at 482. Under that standard, a criminal defendant who attacks the legal sufficiency of the evidence to support a negative finding on an issue that he had to prove must overcome two hurdles. *Howard,* 145 S.W.3d at 333–34 (citing *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991)). First, the court of appeals must examine the record for evidence that supports the finding while ignoring all evidence to the contrary. *Id.* at 334. Second, if no evidence supports the negative finding, the appellate court examines the entire record to determine whether it establishes the contrary proposition as a matter of law. *Id.* (citing *Sterner,* 767 S.W.2d at 690).

We hold that the *Sterner* standard is the proper standard by which to review a criminal defendant's legal sufficiency challenge to the trier of fact's negative finding of an issue that the defendant had to prove by a preponderance of the evidence. *See id.* Our holding today places us in line with a majority of Texas courts that apply the civil standard from *Sterner* to these challenges. *See Howard,* 145 S.W.3d at 332;

---

7. *Meraz* was also silent concerning whether both a factual sufficiency review and a legal sufficiency review could be conducted concerning a jury's negative finding on an issue that the defendant had to prove. But *Clewis,* decided six years after *Meraz,* held that both reviews were proper concerning the elements of the offense that the State had to prove beyond a reasonable doubt. *See Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996).

*Nolan v. State*, 102 S.W.3d 231, 237–38 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (applying civil standard to legal sufficiency challenge to jury's rejecting affirmative defense); *Centell v. State*, Nos. 07–98–0344–CR & 07–98–0345CR, 2000 WL 96246, at *4 (Tex.App.-Amarillo Jan.28, 2000, pet. ref'd) (not designated for publication) (same); *Brena v. State*, No. 07–97–0429–CR, 1999 WL 606681, at *2 (Tex. App.-Amarillo Aug.11, 1999, pet. ref'd) (not designated for publication) (same); *Moranza v. State*, 913 S.W.2d 718, 723 (Tex. App.-Waco 1995, pet. ref'd) (same); *Cover v. State*, 913 S.W.2d 611, 619 (Tex.App.-Tyler 1995, pet. ref'd) (same).

The *Sterner* standard for legal sufficiency, employed to review the jury's negative finding on an issue that the criminal defendant had to prove, differs from the *Jackson v. Virginia* legal sufficiency standard. *See Jackson v. Virginia*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89. *Jackson* addresses a due process review of the evidence in the light most favorable to the jury's verdict concerning the elements of the offense that the State had to prove beyond a reasonable doubt. *See id.* The *Sterner* standard for legal sufficiency review, however, applies only when reviewing the evidence to support the factfinder's having rejected an issue that the defendant had to prove by a preponderance of the evidence.[8] *Sterner*, 767 S.W.2d at 690. Additionally, although a finding of legal insufficiency of the evidence under the *Jackson v. Virginia* standard would require acquittal of the defendant, *see* 443 U.S. at 318–19, 99 S.Ct. at 2788–89, a holding of legal insufficiency of the evidence to support the jury's negative finding on the issue of sudden passion would compel the conclusion that the defendant established sudden passion as a matter of law and therefore compel a remand for sentencing on the second-degree punishment range for sudden passion.[9] Tex. Pen.Code Ann. § 19.02(d).

As when addressing other legal and factual sufficiency challenges in criminal cases, in applying the *Sterner* legal-sufficiency standard of review, we must also defer to the factfinder's determination of the credibility of the witnesses and the weight to give evidence. *See Muniz*, 851 S.W.2d at 246 (stating that in conducting legal sufficiency review of evidence under the *Jackson* standard, appellate courts do

8. A minority of courts apply the *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) legal sufficiency analysis to the jury's negative finding on an issue that the defendant had to prove. *See Roybal v. State*, 2003 WL 22241629, at *1–2 (sanity offense); *Cooney v. State*, 803 S.W.2d 422, 425 (Tex.App.-El Paso 1991, writ ref'd) (same); *Torres v. State*, 976 S.W.2d 345, 347 (Tex.App.-Corpus Christi 1998, no pet.) (same). *Roybal* relied on *Arnold v. State*, 873 S.W.2d 27, 30 (Tex.Crim.App.1993), as authority for applying the *Jackson* standard of review. However, *Arnold* and *Roybal* involved different burdens of proof. Because Arnold had previously been declared insane, the State had the burden to prove beyond a reasonable doubt that Arnold was sane at the time of the offense, and, thus, the Court of Criminal Appeals applied the *Jackson v. Virginia* legal-sufficiency standard. *See Arnold*,

873 S.W.2d at 30 (applying *Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89). Roybal, by contrast, had to prove his affirmative defense of insanity by a preponderance of the evidence. *Roybal*, 2003 WL 22241629, at *1–2. We are not persuaded that *Arnold* is pertinent to the standard that applies in reviewing legal sufficiency challenges to a jury's negative answer to an issue that the defendant had to prove by a preponderance of the evidence.

9. In contrast, an appellate court holding that factual insufficiency of the evidence to support the jury's negative finding on the issue of sudden passion would result in a remand for a new punishment trial with possible sentences for either first-degree murder or second-degree sudden passion. Tex. Pen.Code Ann. §§ 19.02(b)(1); (b)(2); (d) (Vernon 2003).

not reevaluate weight and credibility of evidence, but ensure only that jury reached rational decision); *Johnson*, 23 S.W.3d at 8 (stating that appellate court conducting factual sufficiency review must defer to jury's determination concerning what weight to give conflicting testimony because resolution often turns on evaluation of credibility and demeanor). Applying the two-part *Sterner* standard for legal sufficiency in criminal cases thus gives full play to the factfinder's role as the exclusive determiner of facts.

Assuming, in a hypothetical case, that applying the first prong of the *Sterner* legal-sufficiency standard showed that no evidence in the record supported the jury's negative finding on the sudden passion issue, we would then be required to examine the record under the second prong of the *Sterner* test. *See Sterner*, 767 S.W.2d at 690. Applying the second prong, we would search the entire record to determine whether the defendant established, as a matter of law, that he caused the death out of sudden passion arising out of adequate case. *See id.;* TEX. PEN.CODE ANN. § 19.02(d). If the search of the record revealed evidence of sudden passion that was subject to a credibility assessment by the factfinder, which the jury was therefore entitled to disbelieve, we would not consider that evidence in our matter-of-law assessment. *See Muniz*, 851 S.W.2d at 246; *Johnson*, 23 S.W.3d at 8.[10]

If, however, the search of the record revealed evidence of sudden passion that was not subject to a credibility assessment by the jury, for example, a stipulation of evidence by the State and the defendant stating that the defendant caused the death of the deceased out of sudden passion arising out of an adequate cause, then the evidence would show as a matter of law that the defendant proved the issue of sudden passion.

We can envision no circumstances in which physical evidence could conclusively resolve the issue of sudden passion and acknowledge that, in most cases, sudden passion is resolved exclusively by the jury's assessment of whether the witness is credible. The *Sterner* matter-of-law determination is thus left for those rare instances in which the sudden passion issue can be determined from evidence that is not subject to a credibility determination by the jury as, for example, a stipulation of evidence by the parties. Although this is a very high standard that a defendant would rarely meet, it nevertheless provides a mechanism that enables appellate courts to exercise their constitutionally vested jurisdiction and provide relief to a defendant who can conclusively establish that the jury disregarded evidence that was not subject to a credibility assessment and which conclusively established the defendant's punishment-mitigation issue.[11]

---

10. We note that even undisputed and uncontradicted evidence is subject to a credibility analysis by the jury, which may reasonably disbelieve and reject it. *See e.g. Dashield v. State*, 110 S.W.3d 111, 115 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (holding that factfinder may disbelieve uncontradicted expert testimony). The same is true under the preferred standard in civil cases. *See* W. Wendell Hall, *Standards of Review in Texas*, 34 ST. MARY'S L.J. 1, 165–66 (2002).

11. The concurring opinion's reliance on *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.

App.1991) is misplaced for two reasons. First, the holding in *Saxton* pertained to a legal sufficiency review on the issue of self-defense, on which the State has the burden of proof beyond a reasonable doubt, in contrast to the issue of sudden passion, which the defendant must prove by a preponderance of the evidence. Second, *Saxton's* holding is inconsistent with the concurring opinion's analysis here. *Saxton* holds as follows: "In *resolving the sufficiency of the evidence issue,* we look not to whether the State presented evidence which refuted appellant's self-de-

## C. Analysis of Appellant's Sudden Passion Facts for Legal Sufficiency

■■■ Applying the *Sterner* matter-of-law standard, we first examine the record solely for evidence that supports the jury's negative finding on the issue of sudden passion, while ignoring all evidence contrary to that finding. "Sudden passion means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PEN.CODE ANN. § 19.02(a)(2) (Vernon 2003). Adequate cause means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. TEX. PEN.CODE ANN. § 19.02(a)(1) (Vernon 2003).

Appellant denied being upset, angry or irate. Appellant appeared calm and did not scream, cry, or do anything to help Carolyn. The record shows no immediate influence arising out of an adequate cause when appellant stabbed his wife as she lay bleeding on the floor, after interrupting the stabbing to scrub the sofa where he had stabbed her earlier. Ignoring all evidence contrary to the jury's negative finding on the sudden-passion issue, we conclude that some evidence in the record shows that appellant did not kill his wife out of sudden passion arising from an adequate cause. Having reached that conclu-

sion, our legal sufficiency inquiry ends. *See Sterner,* 767 S.W.2d at 690; *Howard,* 145 S.W.3d at 333–34. We hold that the evidence concerning the jury's negative finding on sudden passion is legally sufficient as a matter of law.

We overrule appellant's fifth point of error.

### Factual Sufficiency Review of Sudden Passion

■■■ An appellate court may properly conduct a factual sufficiency review of the jury's negative finding on the sudden passion issue in the punishment stage of trial. *Hernandez,* 127 S.W.3d at 211–12 (holding that appellate court may conduct factual sufficiency review of jury's negative answer to issue of sudden passion special issue that defendant had burden to prove by preponderance of evidence in punishment phase of trial); *see Zuniga,* 144 S.W.3d at 482 (stating that criminal defendant may assert factual insufficiency challenge to attack jury's failure to find elements of affirmative defense, or issue on which defendant had burden of proof). When the defendant has asserted an affirmative defense or has the burden of proof on an issue, a reviewing court considers all the evidence and determines whether the judgment is "so against the great weight and preponderance of the evidence so as to be manifestly unjust." *Id.* In our factual sufficiency review of the evidence, we review all of the evidence neutrally, but we do not intrude on the factfinder's role as

---

fense testimony, but rather we determine whether *after viewing all the evidence in the light most favorable to the prosecution any rational trier of fact* would have found the essential elements of murder beyond a reasonable doubt and would also have found against appellant on the self-defense issue beyond a reasonable doubt.... The court of appeals' failure to use this standard of review was error." *See id.* at 914 (emphasis added). The *Saxton* court then conducted a sufficien-

cy-of-the evidence analysis by stating facts that were inconsistent with Saxton's claim of self-defense. *Id.* Thus, although the concurring opinion correctly notes that *Saxton* states that, when the State has the burden of persuasion at trial, rather than the burden of proof, the State need not produce any evidence to rebut a defendant's claim of self-defense, *Saxton* held, as we hold here, that a legal sufficiency review of the evidence must still be conducted on appeal. *See id.*

the sole judge of the weight and credibility given to any witness's testimony. *See Johnson*, 23 S.W.3d at 7–8.

Appellant asserts two arguments that the evidence is factually insufficient to establish sudden passion. He first contends that the State conceded that he killed his wife out of sudden passion by stating as follows in its closing argument in the guilt-innocence phase of trial: "Well, let's look at what evidence there is of intent to kill. 22 stab wounds in the front, in the back, on the side, in the head, on the face. That's not intent to kill; that's overkill. That's hatred and that's—that's: If I can't have you, nobody can." Contrary to appellant's assertion, the State's closing argument and theory at trial simply demonstrated "hatred" and "overkill," which do not categorically constitute passion arising out of an adequate cause. *See* TEX. PEN.CODE ANN. § 19.02(a)(1) (defining adequate cause as anger, rage, resentment, or terror, in a person of ordinary temper "sufficient to render the mind incapable of cool reflection."); *Hernandez*, 127 S.W.3d at 211 (holding that ordinary anger or causes of defendant's own making are not legally adequate causes).

In his second factual sufficiency challenge, appellant asserts that he met the statutory definition of sudden passion through evidence that he felt "strange" and "upset." We disagree. Feeling "strange" and "upset" does not constitute sudden passion arising out of adequate cause. *See* TEX. PEN.CODE ANN. § 19.02(a)(1) (defining adequate cause as anger, rage, resentment, or terror, in a person of ordinary temper "sufficient to render the mind incapable of cool reflection."); *Gaston v. State*, 930 S.W.2d 222, 226 (Tex.App.-Austin 1996, no pet.) (holding that although defendant "went blank or into a trance, stopped thinking, felt hurt and angry, and lost control of himself" due to wife's nagging, taunting, and promising divorce and property dispute, evidence was not adequate cause to support sudden passion jury instruction).

Appellant does not contend that the evidence is factually insufficient because he felt "panicked." But, even if evidence of panic could constitute sudden passion here, we note further that appellant's feeling panicked conflicts with other evidence that he was calm, not upset, not angry and not irate. Reconciling these conflicts was thus best left to the jury to resolve by credibility assessments of the witnesses' testimony. *Compare Miller v. State*, 753 S.W.2d 473, 476 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd) (holding evidence of panic insufficient to raise sudden passion issue, and thus no jury instruction required) *with Brunson v. State*, 764 S.W.2d 888, 895 (Tex.App.-Austin 1989, no pet.) (holding evidence of panic sufficient evidence to raise issue of sudden passion requiring jury instruction on issue).

Evidence that rebuts appellant's defense of sudden passion arising from an adequate cause includes testimony that described his demeanor as not upset, not angry, not irate, but calm, in addition to evidence that appellant continued to stab his wife as she lay bleeding on the floor, even after he stopped to scrub her blood from the sofa where he had stabbed her earlier.

After viewing all of the evidence in a neutral light, we hold that the evidence supporting the jury's failure to find that appellant acted in sudden passion is not so against the great weight and preponderance of the evidence that the verdict is clearly wrong and manifestly unjust. *See Zuniga*, 144 S.W.3d at 481.

We overrule appellant's sixth point of error.

## Conclusion

We affirm the judgment of the trial court.

En Banc court consists of Chief Justice RADACK and Justices TAFT, NUCHIA, JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, and BLAND.

Justice JENNINGS, concurring, joined by Justice KEYES.

TERRY JENNINGS, Justice, concurring.

Because the en banc court errs in holding that an appellate court is to employ the same standard of review "applied in civil cases" in conducting a legal sufficiency review of a fact finder's rejection of an accused's defensive theory, and in overruling *Patterson v. State*, 121 S.W.3d 22 (Tex. App.-Houston [1st Dist.] 2003, pet. dism'd), I concur only in the judgment of the en banc court.

The en banc court holds that "the proper standard in criminal cases for review of legal-sufficiency challenges to a jury's negative finding on an issue that the defendant had to prove is the same standard applied in civil cases." In overruling *Patterson*, the majority emphasizes:

> We discern no rational basis on which to reconcile *Patterson's* conclusion, that we lack jurisdiction to review challenges to the legal sufficiency of the evidence to support a factfinder's negative finding on an issue that a criminal defendant had to prove at trial.

However, the standard of review utilized in civil cases to determine the legal sufficiency of the evidence in regard to a negative finding on an issue on which a party has the burden of proof is inapplicable in the criminal law context.

In a civil case, when a party attacks the legal sufficiency of an adverse finding on an issue on which the party has the burden of proof, the party "must demonstrate on appeal that the evidence establishes, *as a matter of law*, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (emphasis added). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence that supports the finding, the reviewing court must then examine the entire record to determine if the contrary proposition is "established as a matter of law." *Id.* A point of error should be sustained only if the contrary proposition is conclusively established. *Id.* Such a "matter of law" challenge is not applicable in criminal cases where the State has the burden of *persuasion*, not a burden of production, in disproving the defensive theories of an accused. *Saxton v. State*, 804 S.W.2d 910, 912–13 (Tex.Crim.App.1991).

In *Saxton*, the Court of Criminal Appeals reversed the court of appeals' holding that "the State failed to produce evidence to refute [the defendant's] claim of self-defense and that all of the evidence is uncontradicted and is consistent with self-defense." *Id.* at 912 (citation omitted). The court specifically noted that the appellate court's "implicit holding that [the defendant] established 'as a matter of law' that he acted in self-defense is incorrect." *Id.* at 912 n. 4. The court disavowed its previous use of the "as a matter of law" language in the context of the issue of self-defense, "[g]iven that the question of whether the accused acted in self-defense is a fact issue for the trier of fact's determination and that 'beyond a reasonable doubt' is the required level of proof." *Id.* at 912 n. 3. In holding that the court of appeals utilized the wrong standard of review, the court emphasized:

[T]he State has the burden of *persuasion* in disproving the evidence of self-defense. That is not a burden of *production*, i.e., one which requires the State to affirmatively produce evidence refuting the self-defense claim, but rather a burden requiring the State to prove its case beyond a reasonable doubt. . . . [M]ore importantly, case law instructs us that the issue of self-defense is an issue of fact to be determined by the jury. Defensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence. A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory.

*Id.* at 913–14 (alterations in original) (citations omitted).

Accordingly, it is now well-settled law that in reviewing the legal sufficiency of the evidence in regard to a fact finder's rejection of a defensive issue, "we look not to whether the State presented evidence which refuted appellant's [defensive evidence], but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the [defensive] issue beyond a reasonable doubt." *Id.* at 914 (citations omitted).[1]

The issue of sudden passion, like the issue of self-defense, is an issue of fact to be determined by the fact finder, and the fact finder is free to accept or reject defensive evidence on the issue. Such a defensive theory, by its very nature, cannot be conclusively established "as a matter of law" in a criminal case. The en banc court's holding to the contrary, i.e., that we employ the legal sufficiency standard of review "applied in civil cases" to review an accused's challenge to the fact finder's rejection of a defensive issue in a criminal case, is in error.

---

1. In contrast, when a defendant challenges the factual sufficiency of the rejection of a defense, we review all of the evidence in a neutral light and ask whether the State's evidence, taken alone, is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App.2003).