Opinion issued August 29, 2014



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00208-CR

_____

**JASON LEE REED, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 338th District Court
Harris County, Texas
Trial Court Case No. 1266357

## MEMORANDUM OPINION

After he completed two years of a four-year term of community supervision for a drug offense,[1] the State filed a motion to adjudicate Jason Lee Reed's guilt alleging non-payment of various fees and commission of a new law violation. At the conclusion of the adjudication hearing, the trial court found the allegation of a new law violation to be true,[2] entered an order adjudicating his guilt and sentenced him to twelve years' confinement. In his sole issue, appellant contends that the trial court abused its discretion by revoking his community service because the evidence was legally insufficient to support the court's rejection of his self-defense claim.

We affirm.

## Background

In the early morning hours of August 25, 2012, appellant and his wife, Madeline, were working at Reed's Lounge, a bar owned by appellant's parents. The complainant, Charles Matthews, a frequent patron, testified that he arrived at Reed's Lounge with his wife and sister-in-law at approximately 1:50 a.m.

While his wife and sister-in-law remained in the car, Matthews attempted to enter the bar but found the front door locked. Matthews testified he peered in a

---

[1] Possession of a controlled substance (cocaine) in an amount more than four grams and less than two hundred grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102 (3)(d) (West 2010).

[2] Trial court did not find the allegation that appellant had failed to pay required fees and court costs to be true.

window, he saw appellant and his wife having an altercation. He went back to the car and told his wife and sister-in-law to come watch the fight. When he returned, he found the door unlocked and entered the bar. Once inside, Matthews saw two women he recognized as "Taz" and "Big D," and a man and a woman shooting pool.

Matthews testified that appellant began cursing at him. According to Matthews, a struggle ensued between appellant and "Big D" and appellant was slammed to the ground. Appellant then jumped up and ran toward Matthews with his hands extended, calling him a "ho." Matthews testified that he grabbed appellant's shirt and said, "The only reason I'm not sliding you . . . is because of Mama and Daddy Reed," and that he then pushed appellant who fell to the floor.[3] According to Matthews, appellant ran behind the bar and grabbed a gun. After Matthews told his wife and sister-in-law to leave the bar so that they would not get hurt, he said to appellant, "Goddamn, Jason Reed. We grabbing pistols now?" Appellant responded, "Yeah, Southwest. What's up?" before firing the gun.[4] Matthews testified that he did not lunge at appellant or threaten him before appellant fired the gun.

---

[3]    According to Matthews, "sliding" means "whipping [appellant] across the floor."

[4]    "Southwest" is Matthews's nickname.

As he ran toward the door, Matthews, who was unarmed, heard another gunshot. Once outside, he realized that he had been shot. As he began running across the parking lot, he heard another gunshot. Matthews's wife and sister-in-law pulled up in the car and helped Matthews get inside.

When police officers arrived, they found appellant standing in the parking lot. Both he and Madeline told police that appellant had acted in self-defense. Madeline directed Officer Hicks to the .38 revolver under the bar. The officer unloaded the gun and smelled the five cartridges inside to determine whether they had been recently fired. According to Officer Hicks, three of the five cartridges smelled as if they had been recently fired. Officers subsequently took appellant into custody.

At trial, appellant and Madeline's versions of the events differed significantly from Matthews's account. According to Madeline, Matthews arrived at approximately 2:20 a.m. after the bar had closed. When Matthews grabbed appellant by the neck, appellant backed up and told Matthews that the club was closed. Madeline testified that Matthews pushed appellant into the DJ booth, and then grabbed him again and pushed him onto the dance floor and into a mirror, causing it to shatter. Matthews momentarily left the bar but returned and began cursing at appellant who was standing behind the bar. Madeline testified that Matthews made a fast movement toward the bar with his arms outstretched as if he

4

intended to come over the bar. Appellant then fired the gun and Matthews ran away. According to Madeline, appellant did not continue shooting the gun after Matthews fled. She testified that appellant called the police after the shooting.

Appellant testified that Matthews grabbed him and pushed him across the dance floor upon entering the bar. After Matthews had stepped outside, appellant called the police to report having a problem with a belligerent customer.[5] Appellant testified that when Matthews returned, he ran toward the bar and was an arm's length away when appellant shot him. Appellant further testified that he could not fight Matthews because he had a broken bone in the top of his hand.

At the conclusion of the hearing, the trial court found the allegation that appellant had violated the law by committing aggravated assault to be true. The court adjudicated appellant's guilt and sentenced him to twelve years' confinement. Appellant timely filed this appeal.

### Discussion

In his sole issue, appellant contends that the evidence presented at the adjudication hearing was legally insufficient to support the trial court's rejection of his claim that he was justified in using deadly force in self-defense.

---

[5] According to appellant, he called police before shooting Matthews. However, the 911 tape admitted at trial reflects that when he was asked by the emergency dispatcher whether he needed police or an ambulance, appellant initially responded that there had been an accident and that he needed police but that he may need an ambulance, too.

**A. Standard of Review and Applicable Law**

We review a trial court's decision to adjudicate guilt under an abuse of discretion standard. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The State bears the burden to prove by a preponderance of the evidence that appellant violated a condition of his community supervision. *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). This burden is met if the greater weight of the credible evidence creates a reasonable belief that appellant violated a condition of his probation.[6] *See Rickels*, 202 S.W.3d at 764. If the State fails to meet this burden, the trial court abuses its discretion in revoking community supervision. *Hacker*, 389 S.W.3d at 865. We view the evidence in the light most favorable to the trial court's ruling and the trial court is the sole judge of the credibility of the witnesses. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

To establish that appellant committed the new offense of aggravated assault, the State had to prove by a preponderance of the evidence that appellant intentionally, knowingly, or recklessly caused bodily injury to another while using

---

[6] In 1993, during the 73rd Legislative Session, the statutory term for probation was changed to "community supervision." Both terms refer to the same process and will be used interchangeably in this opinion. *Ivey v. State*, 277 S.W.3d 43, 51 n.48 (Tex. Crim. App. 2009).

or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.02(a)(1), 22.02(a)(2) (West 2013). A justification defense exists if appellant reasonably believed that the use of deadly force was immediately necessary for protection against the other's use or attempted use of unlawful deadly force. *Id*. § 9.32(a) (West 2013). A defendant bears the burden to produce some evidence supporting a claim of self-defense. *Cleveland v. State*, 177 S.W.3d 374, 380 (Tex. App.— Houston [1st Dist.] 2005, pet. ref'd) (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)). Once the defendant produces sufficient evidence to raise the issue of self-defense, the State then bears the burden of persuasion to disprove the asserted defense. *See Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991); *Cleveland*, 177 S.W.3d at 380. The burden of persuasion does not require the State to produce evidence; rather, it requires only that the State prove its case beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913. Thus, in reviewing appellant's challenge to the legal sufficiency of the evidence supporting the trial court's rejection of his claim of self-defense, the question is whether, viewing the evidence in the light most favorable to the trial court's ruling, any rational trier of fact could have found the essential elements of the offense by a preponderance of the evidence and also found against the appellant on the defensive issue. *See id.* at 914. A determination of guilt by the trial court is an implicit rejection of the defensive theory. *See id.*

7

**B. Analysis**

Appellant does not dispute that he shot Matthews. Rather, he argues that no reasonable fact-finder could have rejected his self-defense claim. To prevail on a claim of self-defense, a defendant must prove that (1) he would have been justified in using force against the other person under section 9.31 of the Penal Code, and (2) it was reasonable to believe that deadly force was immediately necessary for protection against the other's use or attempted use of unlawful deadly force. *See* TEX. PENAL CODE ANN. § 9.32(a) (West 2013).

**1. *Use of Deadly Force***

Under Penal Code section 9.32(a), appellant had to show that he reasonably believed deadly force was immediately necessary to protect himself from Matthews's alleged use or attempted use of unlawful deadly force. "Deadly force" is force intended or known by the actor to cause, or in the manner of its use or its intended use is capable of causing, death or serious bodily injury. *Id.* § 9.01(3). "Serious bodily injury" is an injury that creates a "substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* at § 1.07(a)(46) (West 2013).

*(a) Presumption of Reasonableness*

Appellant initially contends that his belief that deadly force was immediately necessary to protect against Matthews's use of unlawful force is presumed to be

reasonable. Under section 9.32, such a presumption arises if: (1) the actor has reason to believe that the person against whom the force is used unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment; (2) the actor did not provoke the person against whom the force was used; and (3) the actor was not otherwise engaged in criminal activity at the time the force was used. *Id.* § 9.32(b).

With regard to the first prong, appellant argues that the evidence shows that Matthews entered the bar after closing time without the consent of the owner. In support of his argument, appellant relies on Matthews's testimony that the door to the bar was locked when he arrived and that he was aware that the bar closed at 2:00 a.m. Appellant argues that Matthews's entry after closing time constituted, at a minimum, criminal trespass, or at a maximum, burglary.[7] We disagree. Matthews testified that he arrived at approximately 1:50, before closing time. Further, although the door was initially locked when he arrived, he testified that he was able to enter the bar after someone inside unlocked it. Matthews also testified that there were patrons inside the bar shooting pool when he entered, and that no one asked him to leave the bar.

---

[7] For purposes of the first prong of section 9.32(b)(1)(A), it is undisputed that the bar was both appellant's place of employment and his occupied habitation at the time of the incident.

9

Appellant also argues that Matthews entered the bar "with force" because he assaulted appellant after entering the bar. Specifically, he points to Matthews's testimony that he grabbed appellant by the collar of his shirt and threw him to the floor. However, the first prong of section 9.32(b) requires that the actor have reason to believe that "the person against whom the force is used unlawfully *and with force entered . . . .*" *Id.* § 9.32(b)(1)(A) (emphasis added). Thus, the use of force clearly relates to the unlawful entry itself, not to the person's subsequent actions. *See id.* There is no evidence in the record demonstrating that Matthews used force to enter the bar; rather, the undisputed evidence showed that Matthews entered through the unlocked front door. Based on the evidence above, the trial court could have determined that appellant did not have reason to believe that Matthews had unlawfully and with force entered the bar and, therefore, was not entitled to a statutory presumption of reasonableness. *See Saxton*, 804 S.W.2d at 914 (noting that trial court is sole judge of witnesses' credibility at revocation hearing).

### (b) Reasonableness of Belief

Appellant next argues that the evidence nevertheless shows that he reasonably believed that deadly force was immediately necessary for protection against Matthews's use or attempted use of unlawful deadly force. The State asserts that the evidence was legally sufficient to sustain the court's rejection of

appellant's claim because Matthews's use of force was not capable of causing death or serious bodily injury.

Appellant contends that Matthews's actions and words created a reasonable apprehension of death or serious bodily injury in his mind. In support of his contention, appellant relies on evidence that, after Matthews grabbed him by the neck, he threatened to "slide" appellant across the floor, a potentially deadly weapon, and that he pushed appellant onto the dance floor, causing a mirror to shatter. Appellant argues that it was thus reasonable for him to believe that the use of deadly force was immediately necessary because Matthews had demonstrated "a willingness to use objects in Reed's Lounge as makeshift deadly weapons."

With regard to Matthews's threat to "slide" appellant, the record reflects that Matthews told appellant that he would not slide him across the floor out of respect for appellant's parents, the owners of the bar. Further the testimony only reflects that Matthews pushed appellant to the floor which does not typically constitute deadly force. *See Ogas v. State,* 655 S.W.2d 322, 324–25 (Tex. App.—Amarillo 1983, no pet.) (concluding blow to face of pregnant women with either closed fist or open hand was not deadly force); *see also Warden v. State*, No. 13-09-001116-CR, 2010 WL 3596861, at *4 (Tex. App.—Corpus Christi Sept. 16, 2010, pet. ref'd) (not designated for publication) (concluding pushing or shoving does not normally constitute deadly force); *Patterson v. State*, No. 01-94-00615-CR, 1996

11

WL 283252, at \*2 (Tex. App.—Houston [1st Dist.] May 30, 1996, pet. ref'd) (not designated for publication) (same); *Elisondo v. State*, No. A14-89-00070-CR, 1989 WL 135542, at \*3 (Tex. App.—Houston [14th Dist.] Nov. 9, 1989, no writ) (not designated for publication) (same).

Appellant also contends that Madeline's testimony that Matthews pushed appellant into a mirror on the dance floor, causing it to shatter, is evidence that Matthews used deadly force. "Deadly force" is force intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." TEX. PENAL CODE ANN. § 9.01(3) (West 2013). While use of a mirror may, in some circumstances, constitute the use of deadly force (where, for example, broken shards are wielded as a weapon), here there is no evidence that Matthews used or attempted to use the mirror in a way that could be the basis for a reasonable belief by appellant that his use of deadly force was immediately necessary. Further, the evidence reflects that Matthews was unarmed at the time the incident occurred, and appellant acknowledged that he did not see any type of weapon on Matthews. *See Dearborn v. State*, 420 S.W.3d 366 (Tex. App.—Houston [14th Dist.] 2014, no pet. h.) (finding that while defendant had shotgun, there was no evidence that complainant was armed with anything other than his fists, and noting courts have not treated blows with fists as deadly force)

(citations omitted). In sum, there is nothing in the record showing that Matthews used or attempted to use deadly force against appellant.

A fact finder's decision whether to reject a claim of self-defense ultimately hinges on the credibility of the witnesses. *Smith*, 355 S.W.3d at 146. As the sole judge of the credibility of the witnesses, it was within the trial court's province to accept or reject the defensive evidence. *See Saxton*, 804 S.W.2d at 914. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the evidence was legally sufficient to support the trial court's rejection of appellant's self-defense claim. *See id.* We overrule appellant's issue.

## Conclusion

We affirm the trial court's judgment.

Jim Sharp
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).

13