

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-095-CR

RAY REDDING                                                    APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

### FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. INTRODUCTION

Appellant Ray Redding appeals his conviction for aggravated assault on a public servant with a deadly weapon, a first degree felony. In four points, Redding argues that the jury improperly rejected his affirmative defense of insanity, that the evidence is legally and factually insufficient to support his conviction, and that the trial court improperly overruled his rule 403 objection by failing to perform a balancing test openly or on the record. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Robert Patrick Riley worked for the City of Fort Worth for over twenty-eight years. During his tenure with the city, Riley became the Director of Development. Riley and Redding knew each other because Redding had visited Riley's office in the past, complaining of a neighbor Redding believed was trying to force him to relinquish some property by using microwaves to control his thoughts. Riley testified that in the four or five times Redding had visited his office, Redding had seemed excitable, but not angry.

On the morning of August 10, 2005, Redding left home with a loaded nine-millimeter semi-automatic handgun and took a bus downtown. When he reached the bus transfer downtown, Redding found himself in front of City Hall, hearing voices in his head telling him to go inside and shoot. When Riley arrived at City Hall that morning to plan for a zoning committee meeting, he saw Redding standing in front of the elevators in the hallway near Riley's office. The two men exchanged pleasantries as Riley passed, and then Redding blurted out, "Someone's gotta stop this," drawing Riley's attention in time to turn and see Redding pointing a gun at him. Redding fired one shot at Riley and missed. Riley ran around a corner, attempting to take cover behind a desk, but Redding followed and placed the muzzle of his gun within two feet of Riley's head. Riley tried to defuse the situation, telling Redding to think about what he was doing and talk to someone about his problems.

Deputy City Marshal Trevoy Lenear was outside the building when an employee told him shots had been fired inside. Deputy Lenear responded, saw Redding "fumbling" with a gun, and thought he was trying to clear a malfunction or get a round in the chamber. Deputy Lenear drew his service weapon and commanded Redding to drop the gun and get down on the floor. Redding complied and was handcuffed and arrested.

Redding was indicted for aggravated assault on a public servant with a deadly weapon, attempted murder, and aggravated assault with a deadly weapon. In September 2005, he was found incompetent to stand trial and was placed in various state mental health facilities, where he remained until he was determined to be competent in January 2008. Redding was tried before a jury in March 2009.

At trial, Redding presented an insanity defense. His expert witness, Dr. James Womack, a psychologist, testified that Redding suffers from paranoid schizophrenia and that, at the time of the shooting, he did not know right from wrong. The State's expert, Dr. J. Randall Price, also a psychologist, testified that, although Redding suffers from a severe mental disease or defect that Dr. Price diagnosed as "psychosis not otherwise specified" and delusions, Redding knew at the time of the shooting what he was doing was wrong. Redding presented testimony from family members describing his delusions, auditory command hallucinations, and claims of having a government microchip in the roof of his mouth that manipulated his thoughts and bodily functions via two-way microwave transmissions. Redding's

3

maternal aunt, Nancy Thomas, testified that Redding had shown her documents he had printed from the Internet relating to the "chip being implanted in his head." Thomas also testified that Redding had talked to and argued with voices in his head, telling them to "just leave me alone." Redding's brother, Arthur Wayne Redding, Jr. testified that Redding would call the automated time-and-temperature telephone number every hour on the hour and "give some kind of report" and that Redding had believed a chip had been implanted in him after his jaw was broken and wired shut some years before. Wayne Redding also testified to Redding's interaction with the voices in his head.

The jury rejected Redding's insanity defense, convicted him of aggravated assault on a public servant with a deadly weapon, and assessed his punishment at sixty years' confinement in the institutional division of the Texas Department of Criminal Justice. The trial court sentenced him accordingly. This appeal followed.

### III. SUFFICIENCY OF THE EVIDENCE

In his first, second, and third points, Redding challenges the jury's rejection of his insanity defense and the legal and factual sufficiency of the evidence supporting his conviction. In his first point, he alleges that he proved by a preponderance of the evidence that he was insane at the time of the shooting and that, at the time of the offense and as the result of his mental illness, he did not know that his conduct was wrong. In his second point, Redding challenges the legal sufficiency of the evidence to prove the elements of aggravated assault on a public

4

servant with a deadly weapon. In his third point, Redding argues that the evidence supporting the jury's rejection of his insanity defense was factually insufficient and also challenges the factual sufficiency of the evidence as to the *mens rea* element of the crime itself. We will address each of these arguments in turn.

## A. Legal and Factual Sufficiency

### 1. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App.

5

1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson*, 204 S.W.3d at 414. We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v.*

6

*State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

### *2. Law on Aggravated Assault on a Public Servant*

A person commits the offense of aggravated assault on a public servant with a deadly weapon if he (1) intentionally or knowingly (2) threatens a person (3) that the actor knows to be a public servant (4) with imminent bodily injury (5) while the public servant is lawfully discharging an official duty and (6) employs a deadly weapon in the assault. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2)(B) (Vernon Supp. 2009).

The offense of assault on a public servant does not require that the public servant be assaulted *because* of his status, merely that his status be known to the defendant and that the public servant be assaulted while lawfully discharging his official duty. *See id.* § 22.02(b)(2)(B).

### *3. Legally Sufficient Evidence to Support Conviction*

In his second point, Redding argues that the evidence was legally insufficient to prove the elements of aggravated assault on a public servant with a deadly weapon. Specifically, Redding argues that the State failed to carry its burden to prove beyond a reasonable doubt that he committed the crime.

The evidence demonstrated that Redding aimed a gun at Riley near the elevators in City Hall and fired a shot. Kari Burgett, a human resources employee,

7

testified that she heard a gunshot and saw Redding, gun in hand, chasing Riley. Riley was a public servant in lawful discharge of his duties as the Director of Development for the City of Fort Worth; he was at work preparing for a zoning committee meeting. Redding knew Riley was a public servant; the two men had spoken on multiple previous occasions about matters related to city affairs.

When Redding drew his gun and fired in Riley's direction, he placed Riley within a zone of danger where imminent injury was not only possible, but likely, especially considering that Redding chased Riley down and pointed the gun at his head. Finally, Redding used a nine-millimeter handgun in the assault, a firearm, which is by definition a deadly weapon. *See id.* § 1.07(a)(17)(A) (Vernon Supp. 2009).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Redding committed aggravated assault on Riley, a public servant, with a deadly weapon. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. Accordingly, we overrule his second point.

### 4. Factually Sufficient Evidence to Support Conviction

Redding argues in a portion of his third point that the evidence was factually insufficient to show that he possessed the requisite *mens rea* to commit aggravated assault on a public servant with a deadly weapon because Redding did not shoot at

8

Riley because of his status as a public servant.[2]  Rather, according to Redding, he shot at Riley "to 'stop' the voices from telling [him] what to do."

The State had to prove beyond a reasonable doubt that Redding committed aggravated assault on a person—Riley—whom Redding knew to be a public servant while Riley was engaged in the lawful discharge of his official duties.  For a defendant's delusional state to affect the *mens rea* element of the offense, as Redding contends, the defendant would have to believe that his target is something other than a public servant.  *See Ruffin v. State*, 270 S.W.3d 586, 593–94 (Tex. Crim. App. 2008) (noting that the law presumes that criminal defendants are sane and intend the natural consequences of their acts).  Instead, Redding presented a delusional motive for firing at an individual whom Redding knew was a public servant.  Nowhere in the record do we find evidence that Redding believed Riley was anything other than the Director of Development for the City of Fort Worth.  Consequently, we hold that factually sufficient evidence existed that Redding possessed the required *mens rea*, and we overrule this portion of his third point.

### B. Affirmative Defense of Insanity

In Redding's first point and in the remainder of his third point, he argues that the evidence is legally and factually insufficient to support the jury's implicit finding rejecting his insanity defense.  Redding alleges that he proved by a preponderance

---

[2] We will address the remainder of Redding's argument in his third point—regarding the sufficiency of the evidence to support the jury's implicit finding rejecting his insanity defense—separately below.

of the evidence that he was insane at the time of the shooting and he did not know that his conduct was wrong at the time of the offense and as the result of his mental illness.

### 1. Standards of Review

Section 8.01(a) of the penal code provides that "[i]t is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." Tex. Penal Code Ann. § 8.01 (Vernon 2003). The defendant has the burden of proving an affirmative defense by a preponderance of the evidence. *Id*. § 2.04(d).

When reviewing the legal sufficiency of the factfinder's implicit rejection of an affirmative defense, we must first examine the record for evidence supporting the jury's implicit finding rejecting the affirmative defense, ignoring all evidence to the contrary. *See Cleveland v. State*, 177 S.W.3d 374, 387 (Tex. App.—Houston [1st Dist.], pet. ref'd) (en banc), *cert. denied*, 547 U.S. 1073 (2006); *Howard v. State*, 145 S.W.3d 327, 333–35 (Tex. App.—Fort Worth 2004, no pet.). If there is no evidence to support the finding, then we must examine the entire record to see if the appellant proved the affirmative defense as a matter of law. *Cleveland*, 177 S.W.3d at 387; *Howard*, 145 S.W.3d at 333–35.

When reviewing the factual sufficiency of the factfinder's implicit rejection of an affirmative defense, we must consider all the evidence relevant to the affirmative defense and determine whether the judgment is so against the great weight and

10

preponderance of the evidence as to be manifestly unjust. *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990). In our review, we may not usurp the function of the trier of fact by substituting our judgment in the place of its verdict. *See id.* at 154. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have voted to acquit as jurors. *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). We may sustain this point only if, after detailing the relevant evidence and stating in what regard the contrary evidence greatly outweighs the evidence supporting the verdict, we also clearly state why the verdict is so against the great weight of the evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias. *Meraz*, 785 S.W.2d at 154 n.2; *see Clewis v. State*, 922 S.W.2d 126, 135–36 (Tex. Crim. App. 1996).

### 2. Insanity: Applicable Law

The test for determining insanity is whether, at the time of the conduct charged, as a result of mental disease or defect, the defendant did not know his conduct was wrong. *Ruffin*, 270 S.W.3d at 592. In this context, "wrong" means "illegal." *Id*.; *Bigby v. State*, 892 S.W.2d 864, 878 (Tex. Crim. App. 1994), *cert. denied*, 515 U.S. 1162 (1995). Although jurors may not arbitrarily disregard expert testimony as to insanity, neither may they give conclusive effect to such testimony. *Graham v. State*, 566 S.W.2d 941, 951 (Tex. Crim. App. 1978). The circumstances of the crime itself are also important in determining the mental state of the accused at the time of the commission of the offense. *Id*. at 951.

*3. Legally Sufficient Evidence Supporting Rejection of Insanity Defense*

We have reviewed the evidence supporting the jury's implicit finding that Redding knew, at the time of the shooting, that what he was doing was wrong. *See Howard*, 145 S.W.3d at 334. Dr. Price testified for the State that Redding did, in fact, hear voices telling him to enter the building and shoot so that he could get his story heard in a court of law.[3] However, Dr. Price also noted that Redding had told him in their interview that he was arguing with the voices, telling them that he did not want to shoot up City Hall because doing so would result in him being sent to prison.

While it was undisputed that Redding had a mental disease or defect, his realization that he would go to jail if he shot a gun in City Hall sufficiently supports the jury's finding that he had known, when he shot at Riley, that what he was doing was wrong. In other words, a rational jury having heard this testimony could have chosen to believe it and found Redding sane at the time of the shooting because his realization that he would go to jail showed that he knew his act was illegal and therefore "wrong." *See Cleveland*, 177 S.W.3d at 387; *Ruffin*, 270 S.W.3d at 592. We hold that the evidence is legally sufficient to support the jury's implicit finding rejecting Redding's affirmative defense of insanity.

*4. Factually Sufficient Evidence Supporting Rejection of Insanity Defense*

---

[3] Notably, Dr. Womack also testified that Redding's motive for the shooting was to be arrested. Redding told him in interviews, "I'd be arrested, but when I told them what was happening, I would get to go home. They would uncover the conspiracy and find the equipment [microchip] and have it turned off."

Having held the evidence legally sufficient to support the jury's rejection of Redding's insanity defense, we now address the factual sufficiency of the evidence to support the jury's rejection of the defense.

It is undisputed that Redding had a severe mental disease or defect at the time of the shooting. The issue here is whether, as a result of that disease or defect, Redding had known that shooting a gun at Riley was wrong. Redding's expert, Dr. Womack, who interviewed Redding, reviewed his available data, and performed a social history on him, testified that Redding suffers from paranoid schizophrenia and did not know right from wrong when he shot at Riley. Dr. Womack based these conclusions on Redding's failure to attempt to avoid detection, to express remorse, and to dispose of evidence. Dr. Womack testified that he did not find dispositive that Redding had known that he would be "detained" if he used the gun inside City Hall. Rather, he focused on the moral correctness of the act as seen by Redding due to his mental disease. However, whether Redding believed the act of firing a gun at someone in City Hall was morally right is immaterial; instead, the question is, "Does the defendant factually know that society considers this conduct against the law, even though the defendant, due to his mental disease or defect, may think that the conduct is morally justified?" *Ruffin*, 270 S.W.3d at 592. Redding's argument with the voices in his head strongly indicates his knowledge that discharging a weapon at another human being is something society considers against the law. *See id*. In fact, Redding's motive for the shooting is dispositive. He went to City Hall with a gun

13

in order to fire that gun inside, in the hope that he would be caught, brought to trial, and get a chance to air his grievances in open court. Such an expectation clearly indicates knowledge of the wrongfulness of the act.

After our review of all the evidence relevant to the issue of insanity, we have determined that the jury's verdict is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Meraz*, 785 S.W.2d at 155. Given both the gravamen and volume of testimony in favor of the jury's implied finding, we hold that the jury's rejection of Redding's insanity defense was grounded on factually sufficient evidence.

Having held that the evidence was legally and factually sufficient to support the jury's implied finding rejecting his affirmative defense of insanity, we overrule Redding's first point and the remainder of his third point.

## IV. ADMISSION OF EVIDENCE WAS NOT ABUSE OF DISCRETION

In his fourth point, Redding argues that the trial court abused its discretion when it overruled his rule 403 objection to the admission of the gun, magazine, and ammunition used in his assault on Riley.

Texas Rule of Evidence 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Once a defendant makes a rule 403 objection, the trial court must weigh the probative value of the evidence to determine if it is substantially outweighed by its

14

potential for unfair prejudice. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

We reverse a trial court's decision to admit evidence rarely and only after a clear abuse of discretion. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Vega v. State*, 898 S.W.2d 359, 362 (Tex. App.—San Antonio 1995, pet. ref'd). Factors considered in our analysis of an issue regarding rule 403 include (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational, yet indelible, way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *See Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

Here, because Redding was indicted for the offense of aggravated assault on a public servant with a deadly weapon, the State was required to prove that he exhibited a deadly weapon—here, a gun—during the commission of the assault. The gun, magazine, and bullets complained of by Redding constituted direct evidence of that element of the offense. *See Moss v. State*, 75 S.W.3d 132, 141 (Tex. App.—San Antonio 2002, pet. ref'd) (holding admission of firearms, holster, magazine, and bullets in aggravated robbery case was not violative of rule 403 because evidence constituted circumstantial evidence that defendant exhibited firearm during robbery). The probative value of the evidence was thus considerable, and the evidence was necessary to the State's case. *See Erazo*, 144 S.W.3d at 489.

15

Weighing the probative value of the evidence with the other rule 403 factors, the trial court could have reasonably concluded that the evidence did not have a tendency to impress the jury in some irrational, yet indelible, way, and the time needed to introduce the evidence was minimal, consisting of less than five pages of the record. *See Santellan*, 939 S.W.2d at 169. Consequently, the trial court could have reasonably concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403.

We hold that the trial court did not abuse its discretion by admitting the gun, magazine, and ammunition over Redding's rule 403 objection, and we overrule Redding's fourth point.[4] *See id.*; *Santellan*, 939, S.W.2d at 169.

## V. CONCLUSION

Having overruled Redding's four points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: WALKER and MCCOY, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 27, 2010

---

[4] In his fourth point, Redding also appears to argue that the State failed to establish chain of custody for the exhibits discussed above. However, his only objection at trial was under rule 403. Thus, Redding did not preserve the issue for appeal. *See* Tex. R. App. P. 33.1.