ACCEPTED
01-14-00561-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/29/2015 5:42:19 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00561-CR

IN THE COURT OF APPEALS FOR THE

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/29/2015 5:42:19 PM
CHRISTOPHER A. PRINE
Clerk

FIRST DISTRICT OF TEXAS

HOUSTON, TEXAS

JONATHAN ROSARIO,
Appellant

V.

STATE OF TEXAS,
Appellee

Appealed From The
186th Judicial District Court
Of Bexar County, Texas

BRIEF FOR THE APPELLANT

GROSS & ESPARZA, P.L.L.C.
MICHAEL C. GROSS
State Bar No. 08534480
106 South St. Mary's Street, Suite 260
San Antonio, Texas 78205
Lawofcmg@gmail.com
(210) 354-1919
(210) 354-1920 Fax

Attorney for the Appellant,
JONATHAN ROSARIO

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Mr. Jonathan Rosario, Appellant

Michael C. Gross, Attorney for the Appellant
106 South St. Mary's Street, Suite 260
San Antonio, Texas  78205

Alex Scharff, Attorney for the Appellant
222 East Main Plaza
San Antonio, Texas  78205

Loraine Efron, Attorney for the Appellant
1001C San Pedro Avenue
San Antonio, Texas  78216

Enrico Valdez, Assistant District Attorney
101 West Nueva
San Antonio, Texas  78205

Tanner Neidhardt, Assistant District Attorney
101 West Nueva
San Antonio, Texas  78205

Ryan Groomer, Assistant District Attorney
101 West Nueva
San Antonio, Texas  78205

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . 2

POINTS OF ERROR.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**POINT OF ERROR ONE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

> **THE JURY'S REJECTION OF THE APPELLANT'S CLAIM OF SELF-DEFENSE IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.**
>
> ARGUMENT AND AUTHORITIES IN SUPPORT OF POINT OF ERROR ONE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**POINT OF ERROR TWO** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

> **THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S REJECTION OF THE CLAIM THAT THE MURDER WAS COMMITTED UNDER THE IMMEDIATE INFLUENCE OF SUDDEN PASSION ARISING FROM AN ADEQUATE CAUSE.**

ARGUMENT AND AUTHORITIES IN SUPPORT OF
POINT OF ERROR TWO. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**POINT OF ERROR THREE** .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO SUPPORT THE JURY'S REJECTION OF THE CLAIM THAT THE MURDER WAS COMMITTED UNDER THE IMMEDIATE INFLUENCE OF SUDDEN PASSION ARISING FROM AN ADEQUATE CAUSE.**

ARGUMENT AND AUTHORITIES IN SUPPORT OF
POINT OF ERROR THREE.. . . . . . . . . . . . . . . . . . . . . . . . . . 20

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

Allen v. State, 253 S.W.3d 260
        (Tex. Crim. App. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Brooks v. State, 323 S.W.3d 893
        (Tex. Crim. App. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Clayton v. State, 235 S.W.3d 772
        (Tex. Crim. App. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cleveland v. State, 177 S.W.3d 374
        (Tex. App. - Houston [1st Dist.] 2005, pet. ref'd). . . . . . . . . . . . . . . 17, 20

Hartsfield v. State, 305 S.W.3d 859
        (Tex. App. - Texarkana 2010, pet. ref'd). . . . . . . . . . . . . . . . . . . . 12

iv

Hooper v. State, 214 S.W.3d 9
(Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jackson v. Virginia, 443 U.S. 307,
99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . . . . . . . . . . . . . . . . . . . . 11, 12

Malik v. State, 953 S.W.2d 234
(Tex. Crim. App. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Meraz v. State, 785 S.W.2d 146
(Tex. Crim. App. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Morales v. State, 357 S.W.3d 1
(Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Saxton v. State, 804 S.W.2d 910
(Tex. Crim. App. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Smith v. State, 355 S.W.3d 138
(Tex. App. - Houston [1st Dist.] 2011, pet. ref'd) . . . . . . . . . . . . . 11, 16, 17

Watson v. State, 204 S.W.3d 404
(Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Zuliani v. State, 97 S.W.3d 589
(Tex. Crim. App. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Zuniga v. State, 144 S.W.3d 477
(Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## Constitutions And Statutes

Tex. Penal Code Section 9.32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Tex. Penal Code Section 9.33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Tex. R. App. P. 38.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex. R. App. P. 39.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

NO. 01-14-00561-CR

IN THE COURT OF APPEALS FOR THE

FIRST DISTRICT OF TEXAS

HOUSTON, TEXAS

JONATHAN ROSARIO,
Appellant

V.

STATE OF TEXAS,
Appellee

Appealed From The
186th Judicial District Court
Of Bexar County, Texas

BRIEF FOR THE APPELLANT

TO THE HONORABLE COURT OF APPEALS:

Jonathan Rosario, the Appellant in Cause Number 2013-CR-5658 in the 186th

Judicial District Court of Bexar County, Texas and the Appellant in this cause,

pursuant to Rule 38.1 of the Texas Rules of Appellate Procedure, submits this brief

to this Honorable Court for the purpose of appealing the judgment and sentence in

this cause that were adjudged on May 23, 2014. The parties will be referred to as "the Appellant" and "the State."

## STATEMENT OF THE CASE

The Appellant was indicted in Cause Number 2013-CR-5658 with Murder occurring on or about December 2, 2012. (T - 7, 95).[1] The jury trial began with jury selection on May 14, 2014 before the Honorable Maria Herr, presiding judge. (R - v.2 - 1). On May 22, 2014, the jury found the Appellant guilty, contrary to his plea. (R - v.8 - 1, 119). On May 23, 2014, the jury sentenced the Appellant to imprisonment for forty years in the Texas Department of Criminal Justice, Institutional Division and no fine. (T - 95; R - v.9 - 1, 163). A motion for new trial was timely filed on June 16, 2014 and was denied by operation of law. Notice of appeal was timely filed on June 16, 2014. (T - 102).

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for the Appellant respectfully requests leave, pursuant to Rule 39.1 of the Texas Rules of Appellant Procedure, to make oral argument to this Honorable Court. Counsel believes that oral argument is necessary for a full and complete understanding of the facts and constitutional issues presented in this case. This request is made so that justice may be done.

---

[1] The clerk's record will be referred to as "T and page number." The court reporter's record will be referred to as "R and volume and page number."

## POINTS OF ERROR

POINT OF ERROR ONE
    THE JURY'S REJECTION OF THE APPELLANT'S CLAIM OF SELF-DEFENSE IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

POINT OF ERROR TWO
    THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S REJECTION OF THE CLAIM THAT THE MURDER WAS COMMITTED UNDER THE IMMEDIATE INFLUENCE OF SUDDEN PASSION ARISING FROM AN ADEQUATE CAUSE.

POINT OF ERROR THREE
    THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO SUPPORT THE JURY'S REJECTION OF THE CLAIM THAT THE MURDER WAS COMMITTED UNDER THE IMMEDIATE INFLUENCE OF SUDDEN PASSION ARISING FROM AN ADEQUATE CAUSE.

## STATEMENT OF FACTS

Romello "Mello" James knew Michael Huizar had been selling drugs, and Mello informed the parents of Huizar about this selling of drugs. (R - v.3 - 130-131). As a result, Huizar and his friend Robert Aldana were very angry with Mello. (R - v.4 - 190; R - v.6 - 252). About one week prior to December 2, 2012, Aldana assaulted Mello since Mello had informed on Huizar. (R - v.3 - 68, 144). Huizar used his cell phone to videotape this fight. (R - v.3 - 132, 138, 142; R - v.10 - Defense Exhibit 2).

On December 2, 2012, both Aldana and Mello wanted a rematch to fight again with each other. (R - v.3 - 69, 71, 138). On this date, Huizar was seventeen years old, Aldana was sixteen years old, Jacob St. Clair was eighteen years old, and John Valdez

3

was about twenty years old. (R - v.3 - 135, 148). Just prior to the rematch, Huizar and Aldana had been smoking marijuana with John Valdez and Jacob St. Clair. (R - v.3 - 124-126). Huizar was on probation at the time. Id. Aldana received a text message from Mello about scheduling the rematch for that night. (R - v.3 - 127, 136). Huizar received a call from the complainant, Kevin Hill, that several people were at the site where the rematch was to take place. (R - v.4 - 9). Hill was in an agitated mood. (R - v.6 - 176-177). After the call from Hill, Huizar sent a text message to St. Clair that stated, "Get ready, we fittin' to fuck up Romello."  (R - v.4 - 10, 12). Mello thought is was possible that Huizar and Aldana would bring weapons to the fight. (R - v.4 - 69).

Huizar drove five people including Aldana, St. Clair, and Valdez to the fight and, in his car, there were knives and brass knuckles. (R - v.3 - 71-75, 122-123, 144; R - v.4 - 99). At the site of the rematch, Hill joined Huizar's "crew" against the people who were with Mello. (R - v.4 - 13). Huizar had more people with him than Mello had with him. (R - v.5 - 44). Aldana and Huizar and everyone else in their crew, except Hill, had weapons. (R - v.6 - 151). Aldana and Huizar brought people with them to the rematch including Jacob St. Clair who had a knife with him by his side, and John Valdez who had two knives on his belt and a taser. (R - v.3 - 122-123; R - v.6 - 28-29, 75; R - v.6 - 220). Prior to the rematch, Mello called people and went

4

on Facebook and asked his friends (including a female named Shay Godley) to come help him during the rematch. (R - v.4 - 70, 102-103). Mello was afraid that if he beat Aldana in the fight that other people would begin to assault Mello. (R - v.4 - 103). Five people, including the Appellant (Jonathan Rosario) and Shay, accompanied Mello to the rematch. (R - v.4 - 71-74; R - v.5 - 31). In the car was a bat and a screwdriver. (R - v.5 - 33).

The rematch resulted in many people fighting each other, and many of the combatants were carrying knives, a taser, and the threat of a gun. Jonathan brought a paring knife with him to the rematch. (R - v.5 - 34). Jonathan did not appear as if he was ready to use the knife. (R - v.6 - 132). Prior to the rematch fight, Emily from Huizar's crew threatened Mello's group. (R - v.5 - 82-83). Emily was in a bad mood. (R - v.6 - 177-178). Emily made a statement that was threatening to Mello's group that she had "a 40 Glock" nearbyat her house and would use it. (R - v.6 - 178-180; R - v.7 - 34). This terrified Jonathan since he is afraid of guns after his friend was shot and killed when Jonathan was fourteen years old. (R - v.7 - 176-177).  Hill told one of the people from Mello's group that, "I don't give a fuck about you. Get the fuck away from me." (R - v.7 - 29-30). It was clear that everyone in Huizar's crew wanted to fight Mellos's group. (R - v.6 - 187). Hill and Emily had some dogs with them that were threatening to a person from Mello's group. (R - v.6 - 135). If there was

5

fighting, there was a worry that the dogs might attack someone. (R - v.6 - 135). Emily and Hill were drinking alcohol at this time. (R - v.7 - 31-32).

At the rematch, Huizar struck Mello in the head, Mello fell to the ground, and Huizar then kicked Mello in the head at least seven times while Mello was on the ground causing Mello's head to bounce off the asphalt. (R - v.3 - 90-91, 146-148; R - v.4 - 115, 159-160, 204; R - v.5 - 47, 73, 75; R - v.7 - 42-43). Shay was getting bad vibes at this point of the fighting. (R - v.5 - 74). While Huizar was kicking Mello, Hill and St. Clair stepped in and Hill fought with two people. (R - v.4 - 19). St. Clair pulled his knife out at this point since he thought he would be attacked by Mello's group. (R - v.6 - 228). While Huizar was kicking Mello, Valdez brandished his taser to keep the people with Mello from stopping Huizar. (R - v.3 - 147; R - v.4 - 208). The taser was inches from Shay's eyes, and Shay could hear the taser. (R - v.5 - 48, 83). Shay felt very threatened at this point. (R - v.5 - 83). At this point, Hill began fighting with another person, and then another person from Mello's group confronted Hill and Hill then assaulted that second person too and knocked out one person. (R - v.4 - 208-210, 214; R - v.6 - 30-31, 104). Mello was limp on the asphalt when Huizar repeatedly kicked him in the head. (R - v.5 - 76). Mello sustained a swollen eye, fractured nose, and bleeding face and eye. (R - v.4 - 113-115). Mello stated that his memory was adversely affected by these injuries to his head. (R - v.4 - 127).

Shay attempted to stop Huizar from continuing to kick Mello in the head. (R - v.4 - 116-117). Shay stated that she thought Mello would be killed if Shay did not stop the kicking. (R - v.5 - 47, 77). Shay thought she would be killed during this fighting. (R - v.5 - 85). Emily then assaulted Shay and they began fighting each other. (R - v.3 - 149-152; R - v.4 - 118; R - v.5 - 48-50, 79-80, 82, 97; R - v.6 - 100).

Everyone "got wound up" when Emily and Shay were fighting, and it turned into "a real big brawl." (R - v.5 - 83; R - v.6 - 26, 104). Nobody wanted to stop any of the fighting, and "a bunch of people have weapons" so it was "not a good situation." (R - v.6 - 191). A big fight broke out and "everybody just started swinging" and Huizar's crew "pulled out more weapons." (R - v.6 - 192). Jonathan was terrified when he saw the knives and Taser. (R - v.7 - 179).

Shay was on the ground and Valdez and Jacob and Hill and Aldana and "a lot of other people" in Huizar's group began hitting and punching Shay in the back of the head while she was on the ground. (R - v.4 - 117-118; R - v.5 - 84, 97; R - v.6 - 27, 101-102, 106). Valdez had his taser in one hand and was hitting Shay with his other hand. (R - v.6 - 149, 191). Hill also kicked Shay while Shay was on the ground. (R - v.5 - 96). Jonathan attempted to help Shay. (R - v.6 - 197). Everyone then began fighting and it was a very intense and emotional situation. (R - v.4 - 122, 124; R - v.6 - 26). A person from Huizar's group pointed two knives at a person from Mello's group. (R - v.6 - 147, 153).

During the fighting, Jonathan Rosario attempted to stop the complainant, Kevin Hill, from hitting Shay and continuing the fighting. (R - v.6 - 109-110, 112; R - v.7 - 195, 196). Hill struck Jonathan who then fell to the ground. (R - v.6 - 109-110; R - v.7 - 197-203). Hill (who was nineteen years old) had Jonathan (who was only seventeen years old) on the asphalt and was beating Jonathan. (R - v.6 - 109-110; R - v.7 - 48-49, 52, 64, 159). At this time "it was a free for all. Everybody was hitting everybody." (R - v.7 - 56). Hill was punching Jonathan in the head and banging his head on the asphalt street. (R - v.7 - 203). During this assault, Jonathan sustained wounds to include a head injury, chin injury, lip injury, bruising to the neck and chest, and an elbow injury. (R - v.5 - 91; R - v.7 - 210-216; R - v.10 - State's Exhibit 37). Jonathan suffered a concussion from the beating by Hill, and Hill then began to choke Jonathan. (R - v.7 - 178, 203, 205). Jonathan was blacking out and thought he was going to die, so he pushed Hill away from him with his hand and stabbed Kevin with the paring knife. (R - v.7 - 205). Someone pulled Hill off of Jonathan and the fighting ended. (R - v.7 - 56).

After the fighting ended, Hill stood up but something was wrong with him. (R - v.6 - 153). When Hill stood, the fighting was already ended. (R - v.6 - 155). Jonathan was standing by Shay. (R - v.6 - 154). As Mello's group were walking toward their car, Huizar's crew were gathered around Hill. (R - v.6 - 155).

8

Someone yelled that Hill had been "snuffed" and everyone ran away from the area since Emily was running toward her house where she had her gun, and Mello's group including Jonathan feared retaliation. (R - v.7 - 57). Jonathan was very upset and shaking after the fight with Hill. (R - v.5 - 94). Jonathan was bleeding while he was in the car and there was a lot of blood coming from Jonathan. (R - v.6 - 200-201). Everyone in the car with Mello and Jonathan were in shock since the rematch fight was not a clean fight given how Huizar's crew attacked Mello's friends. (R - v.5 - 94). Everything happened in about four or five minutes. (R - v.4 - 124).

## SUMMARY OF THE ARGUMENT

### POINT OF ERROR ONE

A rational jury could not have concluded that the Appellant's belief that the complainant, Hill, threatened him with deadly force was not objectively reasonable. A reasonable juror would have concluded that the Appellant, fearing for his life, stabbed Hill during Hill's attack on the Appellant. The jury's decision rejecting the Appellant's claim of self-defense was not one a rational juror could make when presented with the facts of this case. The evidence is insufficient to support the jury's rejection of self-defense.

### POINT OF ERROR TWO

Given the terrifying circumstances for the Appellant, the attack on the Appellant by the complainant, the choking of the Appellant by the complainant, and

9

given the injuries and damage done to the Appellant by the complainant, the evidence is legally insufficient to support the jury's negative finding on the punishment issue of sudden passion. The Appellant should receive a new punishment hearing.

## POINT OF ERROR THREE

From all the evidence, a rational jury would have reasonably concluded that the complainant was provoking the Appellant when the stabbing occurred, and, therefore, the Appellant was acting under the immediate influence of sudden passion arising from an adequate cause when he stabbed the complainant. After considering all of the relevant evidence, and deferring to the jury's determinations regarding the weight and credibility of the testimony, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust. Accordingly, this Court should hold that the evidence is factually insufficient to support the jury's negative finding on the punishment issue of sudden passion. The Appellant should receive a new punishment hearing.

## POINT OF ERROR ONE

**THE JURY'S REJECTION OF THE APPELLANT'S CLAIM OF SELF-DEFENSE IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.**

**ARGUMENT AND AUTHORITIES IN SUPPORT OF POINT OF ERROR ONE**

When a defendant raises the issue of self-defense, he has the burden of producing some evidence to support this defense. See Zuliani v. State, 97 S.W.3d

10

589, 594 (Tex. Crim. App. 2003). Once a defendant produces some evidence to support this defense, the State has the burden of persuasion to disprove the defense. Id. The burden of persuasion does not require the production of evidence, but it does require that the State persuade the jury beyond a reasonable doubt that the defendant did not act in self-defense. Allen v. State, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008); Zuliani, supra, 97 S.W.3d at 594. Self-defense is an issue of fact to be determined by the jury, and the jury is free to accept or reject any defensive evidence on this issue. Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). A jury that returns a verdict of guilty implicitly rejects a theory of self-defense. Zuliani, supra, 97 S.W.3d at 594; Saxton, supra, 804 S.W.2d at 914.

Because the State carries the burden of persuasion to disprove self-defense beyond a reasonable doubt, an appellate court reviews sufficiency of the evidence under the standard articulated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Smith v. State, 355 S.W.3d 138, 144-145 (Tex. App. - Houston [1st Dist.] 2011, pet. ref'd) (applying Jackson standard to jury's rejection of self-defense claim). Under the Jackson standard, an appellate court must determine whether, after viewing all evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)

11

(citing Jackson, 443 U.S. at 319); Hartsfield v. State, 305 S.W.3d 859, 863 (Tex. App. - Texarkana 2010, pet. ref'd). An appellate court examines legal sufficiency under Brooks while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318-319); Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id.

Self-defense justifies the use of deadly force under certain circumstances. Morales v. State, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011). Section 9.32(a) of the Texas Penal Code states that the use of deadly force is justified "(1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against the other's use or attempted use of unlawful deadly force . . . ." Section 9.33 of the Texas Penal Code states that the use of deadly force

12

to protect a third person is justified "(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person." Section 9.31 of the Texas Penal Code justifies the use of force "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."

Jonathan did not appear as if he was ready to use the knife before the start of the rematch. (R - v.6 - 132). Prior to the rematch fight, Emily from Huizar's crew threatened Mello's group. (R - v.5 - 82-83). Emily was in a bad mood. (R - v.6 - 177-178). Emily made a statement that was threatening to Mello's group that she had "a 40 Glock" nearbyat her house and would use it. (R - v.6 - 178-180; R - v.7 - 34). This terrified Jonathan since he is afraid of guns after his friend was shot and killed when Jonathan was fourteen years old. (R - v.7 - 176-177). Hill told one of the people from Mello's group that, "I don't give a fuck about you. Get the fuck away from me." (R - v.7 - 29-30). It was clear that everyone in Huizar's crew wanted to fight Mellos's group. (R - v.6 - 187).

Shay attempted to stop Huizar from continuing to kick Mello in the head. (R - v.4 - 116-117). Shay stated that she thought Mello would be killed if Shay did not stop the kicking. (R - v.5 - 47, 77). Shay thought she would be killed during this fighting. (R - v.5 - 85). Emily then assaulted Shay and they began fighting each other. (R - v.3 - 149-152; R - v.4 - 118; R - v.5 - 48-50, 79-80, 82, 97; R - v.6 - 100).

Everyone "got wound up" when Emily and Shay were fighting, and it turned into "a real big brawl." (R - v.5 - 83; R - v.6 - 26, 104). Nobody wanted to stop any of the fighting, and "a bunch of people have weapons" so it was "not a good situation." (R - v.6 - 191). A big fight broke out and "everybody just started swinging" and Huizar's crew "pulled out more weapons." (R - v.6 - 192). Jonathan was terrified when he saw the knives and Taser. (R - v.7 - 179).

Shay was on the ground and Valdez and Jacob and Hill and Aldana and "a lot of other people" in Huizar's group began hitting and punching Shay in the back of the head while she was on the ground. (R - v.4 - 117-118; R - v.5 - 84, 97; R - v.6 - 27, 101-102, 106). Valdez had his taser in one hand and was hitting Shay with his other hand. (R - v.6 - 149, 191). Hill also kicked Shay while Shay was on the ground. (R - v.5 - 96). Jonathan attempted to help Shay. (R - v.6 - 197). Everyone then began fighting and it was a very intense and emotional situation. (R - v.4 - 122, 124; R - v.6 - 26). A person from Huizar's group pointed two knives at a person from Mello's group. (R - v.6 - 147, 153).

During the fighting, Jonathan Rosario attempted to stop the complainant, Kevin Hill, from hitting Shay and continuing the fighting. (R - v.6 - 109-110, 112; R - v.7 - 195, 196). Hill struck Jonathan who then fell to the ground. (R - v.6 - 109-110; R - v.7 - 197-203). Hill (who was nineteen years old) had Jonathan (who was only seventeen years old) on the asphalt and was beating Jonathan. (R - v.6 - 109-110; R - v.7 - 48-49, 52, 64, 159). At this time "it was a free for all. Everybody was hitting everybody." (R - v.7 - 56). Hill was punching Jonathan in the head and banging his head on the asphalt street. (R - v.7 - 203). During this assault, Jonathan sustained wounds to include a head injury, chin injury, lip injury, bruising to the neck and chest, and an elbow injury. (R - v.5 - 91; R - v.7 - 210-216; R - v.10 - State's Exhibit 37). Jonathan suffered a concussion from the beating by Hill, and Hill then began to choke Jonathan. (R - v.7 - 178, 203, 205). Jonathan was blacking out and thought he was going to die, so he pushed Hill away from him with his hand and stabbed Kevin with the paring knife. (R - v.7 - 205). Someone pulled Hill off of Jonathan and the fighting ended. (R - v.7 - 56).

Jonathan was very upset and shaking after the fight with Hill. (R - v.5 - 94). Jonathan was bleeding while he was in the car and there was a lot of blood coming from Jonathan. (R - v.6 - 200-201). Everyone in the car with Mello and Jonathan were in shock since the rematch fight was not a clean fight given how Huizar's crew

15

attacked Mello's friends. (R - v.5 - 94). Everything happened in about four or five minutes. (R - v.4 - 124).

Given the above facts, a rational jury could not have concluded that the Appellant's belief that the complainant, Hill, threatened him with deadly force was not objectively reasonable. A reasonable juror would have concluded that the Appellant, fearing for his life, stabbed Hill during Hill's attack on the Appellant. The jury's decision rejecting the Appellant's claim of self-defense was not one a rational juror could make when presented with the facts of this case. The evidence is insufficient to support the jury's rejection of self-defense.

## POINT OF ERROR TWO

**THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S REJECTION OF THE CLAIM THAT THE MURDER WAS COMMITTED UNDER THE IMMEDIATE INFLUENCE OF SUDDEN PASSION ARISING FROM AN ADEQUATE CAUSE.**

### ARGUMENT AND AUTHORITIES IN SUPPORT OF POINT OF ERROR TWO

An appellate court reviews challenges to the legal sufficiency of the evidence with respect to issues on which a defendant had the burden of proof by a preponderance of the evidence, like sudden passion, under the legal sufficiency standard utilized in civil cases. See Smith v. State, supra, 355 S.W.3d at 147-148;

16

Cleveland v. State, 177 S.W.3d 374, 387-388 (Tex. App. - Houston [1st Dist.] 2005, pet. ref'd). The civil legal sufficiency standard requires a two-step analysis. First, a reviewing court examines the record for any evidence that supports the jury's negative finding while ignoring all evidence to the contrary. See Smith, 355 S.W.3d at 148; Cleveland, 177 S.W.3d at 387. Second, if no evidence supports the negative finding, a reviewing court then examines the entire record to determine whether the evidence establishes the issue as a matter of law. Smith, 355 S.W.3d at 148; Cleveland, 177 S.W.3d at 387. A reviewing court defers to the fact-finder's determination of the weight and credibility to give the testimony and the evidence at trial. See Cleveland, 177 S.W.3d at 388-389.

In the case at bar, the trial judge instructed the jury as to sudden passion which the jury rejected. (T - 85-88, 93). The evidence was legally insufficient to support the jury's negative finding on the punishment issue of sudden passion. Everyone "got wound up" when Emily and Shay were fighting, and it turned into "a real big brawl." (R - v.5 - 83; R - v.6 - 26, 104). Nobody wanted to stop any of the fighting, and "a bunch of people have weapons" so it was "not a good situation." (R - v.6 - 191). A big fight broke out and "everybody just started swinging" and Huizar's crew "pulled out more weapons." (R - v.6 - 192). Jonathan was terrified when he saw the knives and Taser. (R - v.7 - 179).

17

Shay was on the ground and Valdez and Jacob and Hill and Aldana and "a lot of other people" in Huizar's group began hitting and punching Shay in the back of the head while she was on the ground. (R - v.4 - 117-118; R - v.5 - 84, 97; R - v.6 - 27, 101-102, 106). Valdez had his taser in one hand and was hitting Shay with his other hand. (R - v.6 - 149, 191). Hill also kicked Shay while Shay was on the ground. (R - v.5 - 96). Jonathan attempted to help Shay. (R - v.6 - 197). Everyone then began fighting and it was a very intense and emotional situation. (R - v.4 - 122, 124; R - v.6 - 26). A person from Huizar's group pointed two knives at a person from Mello's group. (R - v.6 - 147, 153).

During the fighting, Jonathan Rosario attempted to stop the complainant, Kevin Hill, from hitting Shay and continuing the fighting. (R - v.6 - 109-110, 112; R - v.7 - 195, 196). Hill struck Jonathan who then fell to the ground. (R - v.6 - 109-110; R - v.7 - 197-203). Hill (who was nineteen years old) had Jonathan (who was only seventeen years old) on the asphalt and was beating Jonathan. (R - v.6 - 109-110; R - v.7 - 48-49, 52, 64, 159). At this time "it was a free for all. Everybody was hitting everybody." (R - v.7 - 56). Hill was punching Jonathan in the head and banging his head on the asphalt street. (R - v.7 - 203). During this assault, Jonathan sustained wounds to include a head injury, chin injury, lip injury, bruising to the neck and chest, and an elbow injury. (R - v.5 - 91; R - v.7 - 210-216; R - v.10 - State's Exhibit 37). Jonathan suffered a concussion from the beating by Hill, and Hill then began to choke

18

Jonathan. (R - v.7 - 178, 203, 205). Jonathan was blacking out and thought he was going to die, so he pushed Hill away from him with his hand and stabbed Kevin with the paring knife. (R - v.7 - 205). Someone pulled Hill off of Jonathan and the fighting ended. (R - v.7 - 56).

Jonathan was very upset and shaking after the fight with Hill. (R - v.5 - 94). Jonathan was bleeding while he was in the car and there was a lot of blood coming from Jonathan. (R - v.6 - 200-201). Everyone in the car with Mello and Jonathan were in shock since the rematch fight was not a clean fight given how Huizar's crew attacked Mello's friends. (R - v.5 - 94). Everything happened in about four or five minutes. (R - v.4 - 124).

Given the above facts including the terrifying circumstances for the Appellant, the attack on the Appellant by the complainant, the choking of the Appellant by the complainant, and given the injuries and damage done to the Appellant by the complainant, the evidence is legally insufficient to support the jury's negative finding on the punishment issue of sudden passion. The Appellant should receive a new punishment hearing.

# POINT OF ERROR THREE

**THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO SUPPORT THE JURY'S REJECTION OF THE CLAIM THAT THE MURDER WAS COMMITTED UNDER THE IMMEDIATE INFLUENCE OF SUDDEN PASSION ARISING FROM AN ADEQUATE CAUSE.**

### ARGUMENT AND AUTHORITIES IN SUPPORT OF POINT OF ERROR THREE

A reviewing court reviews a challenge to the factual sufficiency of the evidence supporting a jury's negative finding on an issue that the defendant had to prove by a preponderance of the evidence under the factual sufficiency standard announced in Meraz v. State, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990). See Zuniga v. State, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004) (holding that Meraz standard was suitable for sufficiency reviews regarding affirmative defenses because burden of proof on defendant is preponderance of evidence), overruled on other grounds by Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006); Cleveland, 177 S.W.3d at 390-391. The evidence supporting a jury's negative finding on the issue of sudden passion is insufficient if, after considering all relevant evidence, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust. Meraz, 785 S.W.2d at 154-155. A reviewing court reviews all of the evidence neutrally and defers to the fact-finder's determination of the weight and credibility given to any witness's testimony. Cleveland, 177 S.W.3d at 390-391.

In the case at bar, the trial judge instructed the jury as to sudden passion which the jury rejected. (T - 85-93). With respect to this challenge to the factual sufficiency of the evidence supporting the jury's negative finding on the issue of sudden passion, the following facts are relevant. Everyone "got wound up" when Emily and Shay were fighting, and it turned into "a real big brawl." (R - v.5 - 83; R - v.6 - 26, 104). Nobody wanted to stop any of the fighting, and "a bunch of people have weapons" so it was "not a good situation." (R - v.6 - 191). A big fight broke out and "everybody just started swinging" and Huizar's crew "pulled out more weapons." (R - v.6 - 192). Jonathan was terrified when he saw the knives and Taser. (R - v.7 - 179).

Shay was on the ground and Valdez and Jacob and Hill and Aldana and "a lot of other people" in Huizar's group began hitting and punching Shay in the back of the head while she was on the ground. (R - v.4 - 117-118; R - v.5 - 84, 97; R - v.6 - 27, 101-102, 106). Valdez had his taser in one hand and was hitting Shay with his other hand. (R - v.6 - 149, 191). Hill also kicked Shay while Shay was on the ground. (R - v.5 - 96). Jonathan attempted to help Shay. (R - v.6 - 197). Everyone then began fighting and it was a very intense and emotional situation. (R - v.4 - 122, 124; R - v.6 - 26). A person from Huizar's group pointed two knives at a person from Mello's group. (R - v.6 - 147, 153).

During the fighting, Jonathan Rosario attempted to stop the complainant, Kevin Hill, from hitting Shay and continuing the fighting. (R - v.6 - 109-110, 112; R - v.7 -

21

195, 196). Hill struck Jonathan who then fell to the ground. (R - v.6 - 109-110; R - v.7 - 197-203). Hill (who was nineteen years old) had Jonathan (who was only seventeen years old) on the asphalt and was beating Jonathan. (R - v.6 - 109-110; R - v.7 - 48-49, 52, 64, 159). At this time "it was a free for all. Everybody was hitting everybody." (R - v.7 - 56). Hill was punching Jonathan in the head and banging his head on the asphalt street. (R - v.7 - 203). During this assault, Jonathan sustained wounds to include a head injury, chin injury, lip injury, bruising to the neck and chest, and an elbow injury. (R - v.5 - 91; R - v.7 - 210-216; R - v.10 - State's Exhibit 37). Jonathan suffered a concussion from the beating by Hill, and Hill then began to choke Jonathan. (R - v.7 - 178, 203, 205). Jonathan was blacking out and thought he was going to die, so he pushed Hill away from him with his hand and stabbed Kevin with the paring knife. (R - v.7 - 205). Someone pulled Hill off of Jonathan and the fighting ended. (R - v.7 - 56).

Jonathan was very upset and shaking after the fight with Hill. (R - v.5 - 94). Jonathan was bleeding while he was in the car and there was a lot of blood coming from Jonathan. (R - v.6 - 200-201). Everyone in the car with Mello and Jonathan were in shock since the rematch fight was not a clean fight given how Huizar's crew attacked Mello's friends. (R - v.5 - 94). Everything happened in about four or five minutes. (R - v.4 - 124).

From this evidence, a rational jury would have reasonably concluded that the complainant was provoking the Appellant when the stabbing occurred, and, therefore, the Appellant was acting under the immediate influence of sudden passion arising from an adequate cause when he stabbed the complainant. After considering all of the relevant evidence, and deferring to the jury's determinations regarding the weight and credibility of the testimony, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust. Accordingly, this Court should hold that the evidence is factually insufficient to support the jury's negative finding on the punishment issue of sudden passion. The Appellant should receive a new punishment hearing.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Appellant prays this Court reverse the judgment and sentence and order a new trial in this cause, or in the alternative, without waiving the foregoing, remand this cause for a new punishment hearing.

Respectfully submitted,

GROSS & ESPARZA, P.L.L.C.

/s/ Michael C. Gross
Michael C. Gross
State Bar No. 08534480
106 South St. Mary's Street, Suite 260
San Antonio, Texas 78205
(210) 354-1919
(210) 354-1920 Fax

Attorney for the Appellant,
JONATHAN ROSARIO

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Brief for the Appellant was delivered to Enrico Valdez, Assistant District Attorney, 300 Dolorosa, San Antonio, Texas 78205 on the 29th day of April 2015.

/s/ Michael C. Gross

## CERTIFICATE OF COMPLIANCE

1. The brief complies with the type-volume limitation imposed by Rule 9.4(i) of the Texas Rules of Appellate Procedure because the brief contains 5,775 words excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, table of authorities, statement of the case, statement of issues presented, signature, proof of service, certification, certificate of compliance, and appendix.

2. The brief complies with the typeface and the type style requirements of Rule 9.4(e) of the Texas Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using WordPerfect 6.1 in 14 point font and Times New Roman type style.

/s/ Michael C. Gross

24