**Opinion issued May 12, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00242-CR

————————————

**ADARRIS RAYSHAWN OUZENNE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 12CR3441**

---

## MEMORANDUM OPINION

A jury convicted appellant Adarris Rayshawn Ouzenne of aggravated robbery and assessed his punishment at eighteen years' confinement in TDCJ. Ouzenne argues that the evidence is legally and factually insufficient to support the

jury's negative finding on his affirmative defense of duress. We affirm the trial court's judgment.

## Background

Teela Christian was throwing a small birthday party for her teenaged daughter when four armed men wearing ski masks and gloves kicked in the door to Teela's home and announced, "This is a robbery. Get on the floor." One of the men held the house's occupants at gun point, while the others ransacked the house looking for a safe and other valuables. Teela's sister, who was in another room when the robbery occurred, escaped through the bathroom window and called 911.

When the police arrived, two of the robbers who were later identified as Ouzenne and Reginald Patterson ran towards the garage, while the other two robbers ran out of the house and jumped the fence. When the police searched the garage they found what appeared to be a handgun, but was later determined to be a BB or pellet gun, lying on the floor outside a closet that was attached to the garage. Ouzenne was hiding in the closet. Reginald was found hiding in the bathroom next to the closet with a loaded Glock handgun.

After his arrest, Ouzenne made two written statements and a video statement to police—all of which were admitted into evidence at trial. In particular, Ouzenne told the police that he and Reginald were the only two men involved in the

robbery; a third man, who Ouzenne identified as "Pete," drove them to Teela's house but stayed in the car.[1] According to Ouzenne, he and Reginald

> [W]anted some money. We really said we wanted money. We didn't have no plans on who we were going to get or whatever. We decided to ride around the outskirts of Houston and look for a place to hit. We ended up down here cutting through alleyways.
> . . . .
> I was only told that there was a possible lick at this house. I just went room to room, looking for stuff, that was it. When we ride around looking for houses to hit, if a house look a certain way, we just hit it. You know how crooks is, when we see the cars or the house, if it look like something there, then we hit it.[2]

Ouzenne told police that he and Reginald broke into the house looking for money, jewelry, and drugs. They had no intention of hurting anyone and only used the weapons to scare the occupants. Ouzenne admitted to wearing gloves and a do-rag in order to conceal his identity and prevent the police from gathering evidence.

When asked where he got the BB gun, Ouzenne told the police that when he got in the car, he "ask[ed] what tools or whatever we were going to use and how we were going to do this, like how we were going to break in" and he was told that there was a gun behind the driver's seat for him to use. Ouzenne also told the police that he was willing to risk so much in this robbery because "[a]s a man, we

---

[1]   Ouzenne later told police that he did not know if Pete was ever in the house and that if Pete had come inside, he must have entered when Ouzenne was in the back of the house.

[2]   One of the detectives testified that "hitting a lick" generally means committing a robbery.

3

are the head of the household. We are supposed to take care of things. I work on and off doing floors and stuff. Work has been slow."

When the police asked Ouzenne if anyone had forced him to participate in the robbery, Ouzenne said no.

At trial, however, Ouzenne testified to a different version of events. According to Ouzenne, he met up with Reginald and Reginald's brother, Sherman,[3] the night of the robbery. The three men got high together in a car and then went for a drive, with Sherman behind the wheel. Sherman and Reginald were in the front seat talking, while Ouzenne was in the backseat, either asleep, or high and listening to music. Ouzenne denied participating in the conversation and claimed that he was unaware of where they were going or what the brothers were planning.

Ouzenne testified that he fell asleep in the car and when he woke up, they were in the alley behind Teela's house and someone was shaking him and talking about "hitting a lick." Sherman and Reginald were carrying black automatic handguns, and one of them handed Ouzenne a BB gun pistol along with a do-rag and gloves. Ouzenne testified that he did not know what was going on and when he told Reginald and Sherman that he did not want to participate, he was told that he had to or he "wouldn't make it home."

---

[3]   Ouzenne testified that Sherman also went by the name "Pete."

Ouzenne told the jury that he felt like he had no choice but to go with Sherman and Reginald because they were both carrying loaded firearms and he only had a BB gun, and he did not have an opportunity to extricate himself from the situation because Reginald was always right behind him. Ouzenne denied searching any of the rooms or stealing anything, and claimed that after he followed Sherman into the house he went directly to the garage, threw the BB gun down, and hid in the closet.

Ouzenne told the jury that he was still high when he talked to the police and that the police made him talk and told him what to say. He said he lied in his statements and did not say Sherman was a part of the robbery because he was afraid that something might happen to his family if he implicated Sherman.

The jury was charged on the affirmative defense of duress. The jury found Ouzenne guilty of aggravated robbery, implicitly rejecting his duress defense. This appeal followed.

**Legal and Factual Sufficiency**

Ouzenne challenges the legal and factual sufficiency of the evidence supporting the jury's negative finding on his affirmative defense of duress.

**A.     Standard of Review and Applicable Law**

Unlike criminal convictions which are only subject to legal sufficiency review, an appellate court may review a finding rejecting an affirmative defense

for both legal and factual sufficiency. *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015); *Matlock v. State*, 392 S.W.3d 662, 668–70 (Tex. Crim. App. 2013). When a defendant challenges the legal sufficiency of the evidence supporting the jury's rejection of an affirmative defense, we examine the record for any evidence that supports the jury's negative finding while ignoring all evidence to the contrary, unless a reasonable jury could not. *See Matlock*, 392 S.W.3d at 669. If no evidence supports the jury's negative finding, then we examine the entire record to determine whether the evidence establishes the issue as a matter of law. *Id*. A jury's finding on a defendant's affirmative defense should be overturned for lack of legal sufficiency only if the evidence conclusively proves the affirmative defense, and no reasonable jury was free to think otherwise. *Id.* at 670. In reviewing the record, we defer to the jury's determination of the credibility of the witnesses and the weight to give the evidence. *Smith v. State*, 355 S.W.3d 138, 148 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Cleveland v. State*, 177 S.W.3d 374, 388–89 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

In a factual-sufficiency review of a finding rejecting an affirmative defense, we view the entirety of the evidence in a neutral light, but do not usurp the function of the jury by substituting our own judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Matlock*, 392 S.W.3d at 671. We may sustain a defendant's factual-sufficiency claim only if we determine that

6

the verdict is so against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id.*

In order to establish an affirmative defense of duress, a defendant must prove by a preponderance of the evidence that he committed the offense because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. TEX. PENAL CODE ANN. § 8.05(a) (West 2011). Compulsion "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." *Id.* § 8.05(c). The affirmative defense of duress is not available if the actor "intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." *Id.* § 8.05(d).

**B.     Analysis**

The jury was presented with two very different versions of events—one based on Ouzenne's statements to police that indicate that Ouzenne was a willing participant in the robbery and the other based on Ouzenne's trial testimony that he only participated in the robbery because he was under duress.

Here, the record evidence supporting the jury's negative finding on Ouzenne's affirmative defense of duress includes Ouzenne's statements to police that no one forced him to participate in the robbery and that he and Reginald drove around the night of the robbery scouting out locations to "hit" because both men

"wanted money." According to Ouzenne, "[w]ork ha[d] been slow" and he had financial obligations he needed to meet. Ouzenne, who admitted to searching the house for valuables, also told the police that he and Reginald had no intention of hurting anyone and that they only used the weapons to scare the victims. Ignoring all evidence contrary to the jury's negative finding on the issue of duress, we conclude that some evidence in the record shows that Ouzenne was not compelled to commit aggravated robbery in this case by threat of imminent death or serious bodily injury to himself or another. *See* TEX. PENAL CODE ANN. § 8.05(a). Having reached that conclusion, our legal sufficiency inquiry ends. *See Cleveland*, 177 S.W.3d at 390. We hold that the evidence concerning the jury's negative finding on Ouzenne's affirmative defense of duress is legally sufficient as a matter of law.

Ouzenne contends that his trial testimony, coupled with the fact that the only weapon he was carrying during the home invasion was a BB gun, establishes that there was factually insufficient evidence supporting the jury's rejection of his affirmative defense of duress. However, the jury, as factfinder, was free to disbelieve Ouzenne's trial testimony that he was unaware of Reginald and Sherman's plans to rob Teela's house, and that he participated in the robbery because he only had a BB gun and Sherman and Reginald, who were carrying loaded firearms, told him that if he refused to participate he "wouldn't make it home." *See Matlock*, 392 S.W.3d at 671.

8

After reviewing the record in a neutral light and deferring to the jury's assessment of the weight and credibility of the witnesses' testimony, as we must, we conclude that the evidence supporting the jury's rejection of Ouzenne's affirmative defense is not greatly outweighed by the contrary evidence. *Id*. Accordingly, we overrule Ouzenne's challenge to the factual sufficiency of the evidence supporting the jury's rejection of his duress defense.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Justices Keyes, Huddle, and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).